Lincoln Land Co. v. Phelps County.

---

LINCOLN LAND COMPANY V. PHELPS COUNTY.

FILED NOVEMBER 9, 1899.   No. 9,006.

1. **Taxation**: ASSESSMENT OF PROPERTY.  In counties under the township system of government, an individual assessment of property must bear a just relation to the assessed value of all other property in the town; and if it does so, it will not be disturbed.

2. ———: ———: CORRECTIONS.  The county board, in counties under township organization, is authorized to correct individual assessments only where the town board, having jurisdiction, has, upon proper application to it, refused to grant the relief demanded.

3. ———: ———: BOARD OF EQUALIZATION.  In counties under township organization, the supervisors, sitting as a board of equalization, possess no greater authority to redress individual grievances than that possessed by the town board.

4. **Opinion Evidence.**  Triers of fact are not generally bound by opinion evidence of value, even when it is not met by opposing proof.

ERROR from the district court of Phelps county.  Tried below before BEALL, J.  *Affirmed.*

*J. W. Deweese, F. E. Bishop* and *W. S. Morlan*, for plaintiff in error.

*A. J. Shafer* and *S. A. Dravo, contra.*

Sullivan, J.

The Lincoln Land Company was the owner, in 1896, of 528 lots in the city of Holdrege. These lots were assessed for taxation at an average value of $43.79. The company, deeming the assessment unfair, presented its grievance to the town board of equalization, which, after a full hearing, refused to grant any redress. The complaint was then brought before the county board, sitting as a board of equalization. Evidence was there taken touching the correctness of the assessment, and an order made reducing the value of the company's property, for the purposes of taxation, to eighty-five per cent of the value fixed thereon by the assessor. A judgment of the district court affirming this order is the matter complained of in the petition in error.

It appears from the record that the assessors of Phelps county agreed among themselves to make the 1896 assessment on the basis of one-fifth the actual value of the property assessed. It likewise appears that the assessor for the town of Holdrege, in the performance of his duty, adhered to this arrangement, and, in the exercise of his best judgment, fixed values accordingly. His testimony is in part as follows:

"Q. In assessing property in Holdrege, Mr. Gainsforth, you may state whether you have not given the real estate and vacant lots a uniform valuation.

"A. I tried to as far as possible.

"Q. State whether or not you discriminated against non-resident lot owners.

"Mr. Morlan: The Lincoln Land Company claims that the lots owned by the Lincoln Land Company are assessed higher than improved real estate in said city and county, land in said county and personal property in said county, but does not claim that the assessor discriminated against the Lincoln Land Company in favor of any other lot owners owning vacant lots in the city of Holdrege or the first or second additions thereto.

"Q. You may state whether in assessing the vacant property you placed a fair valuation thereon.

"A. I tried to as best I could from what information I could find as to what the lots were held at. I inquired in the west and north and south and center of town about the prices of these lots. I was informed that a certain man in the second addition offered $1,000 for three lots and the Lincoln Land Company would not sell them, and I was informed that they were offered $650 for a back lot in the center of town and would not take it.

"Q. State whether or not the assessment of the vacant lots is in fair proportion to the improved lots.

"A. I suppose so."

Other witnesses testified in regard to the value of the complainant's lots, their estimates ranging all the way from $45 to $150. There was considerable evidence tending to show that the assessed value of the company's property was excessive in comparison with the assessed value of property generally in Phelps county. But there was no proof whatever that the assessed valuation of the lots in question did not bear a just relation to the assessed valuation of other property in the town of Holdrege. There were in the city of Holdrege 793 vacant lots, and the average value thereof, as fixed by the assessor, was $46.34. It may be that all property in the town was valued too high. It may be that the assessor's opinion of real estate values was influenced too much by a buoyant and optimistic temperament; but it can not be said that the company was aggrieved within the meaning of section 62 of the revenue act (Compiled Statutes, 1899, ch. 77, art. 1), unless the valuation of its property was disproportionate to the valuation of other property in the particular assessment district. The annual June meeting of the town board is held, as the statute expresses it, "for the purpose of reviewing the assessment of property of said town." The power conferred is to "review the assessment and correct the same as shall appear to them just." In other words, the authority is to

equalize individual assessments within the territorial jurisdiction of the board. By section 70 of the revenue law (Compiled Statutes, 1899, ch. 77, art. 1) the county board, sitting as a board of equalization, is authorized to adjust assessments so that the aggregate valuation of the property in each assessment district shall bear a just relation to the aggregate valuation of all the property in the county. Power is also given to adjust individual assessments, but it is expressly declared that such power shall not be exercised in counties under township organization until the party considering himself aggrieved shall have made an unsuccessful effort to secure redress from the town board. Clearly, then, the county board of a county under the township system of government is authorized to correct an individual assessment only where the town board, having jurisdiction of the matter, has, upon proper application, refused to grant relief. The authority of the county board in such case is only commensurate with that of the town board. Since there is in the record no substantial proof that the assessment of the Lincoln Land Company's lots does not bear a just relation to the assessed value of all other property in the town of Holdrege, the judgment of the district court is right and must be affirmed. If the aggregate valuation of all the property in the town was too high, the remedy was not by an application for the reduction of individual assessments.

While these considerations dispose of the case, it may be well enough to add that we have not overlooked the contention of counsel that the county board was not justified in finding that the assessor's estimate of the company's lots was only fifteen per cent too high. The assessor was chosen by the electors of his town with reference to his peculiar qualifications to perform well the duties of his office. He acted in good faith, under the sanction of an official oath, with knowledge of the situation and surroundings of the property, and his assessment, therefore, should not be disturbed except for

good and weighty reasons. It should not be set aside merely because some partisan witnesses differed with him in their estimates of values. The members of the board were authorized, in reaching a conclusion, to take into account their own general knowledge of the subject. The generally accepted doctrine of the courts is that triers of fact are not conclusively bound by opinion evidence of value even, when it is not met by opposing proof. See *Head v. Hargrave*, 105 U. S., 45; *Johnson v. Chicago, B. & N. R. Co.*, 37 Minn., 519; *McReynolds v. Burlington & O. R. Co.*, 106 Ill., 152; *Murdock v. Sumner*, 22 Pick. [Mass.], 156; *Walbridge v. Barrett*, 76 N. W. Rep. [Mich.], 973; *Nebraska Loan & Building Ass'n v. Marshall*, 51 Nebr., 534. The judgment of the district court is

AFFIRMED.