LEONARD A. DAVIS, APPELLANT, v. SCHOOL DISTRICT OF THE CITY OF SOUTH OMAHA, APPELLEE.

FILED JUNE 25, 1909.   No. 15,691.

1. Evidence: EXPERTS. The opinion of expert witnesses in a case involving the value of the services of an architect, based upon facts in evidence before the jury, need not be substituted by such jury for its own deliberate judgment.

2. ——: ——: VALUE OF SERVICES. Where a witness skilled in architecture testifies solely as an expert regarding the value of the services of an architect, the same rule will be applied to his testimony that is ordinarily applied to the testimony of expert witnesses in other professional employments.

3. ——: ——: ——. A jury may decline to accept the opinion of expert witnesses upon the value of an architect's services, even though uncontradicted, and in the light of their own experience and general knowledge, and in the exercise of their independent judgment, may base their verdict as to the value of such services upon their own deductions from all of the evidence before them of services performed.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*T. J. Mahoney* and *J. A. C. Kennedy,* for appellant.

*A. H. Murdock* and *A. C. Pancoast, contra.*

DEAN, J.

Leonard A. Davis, plaintiff and appellant, is an architect who was employed in that capacity by the board of education of the school district of South Omaha to prepare plans and specifications for the construction of a high school building for the defendant school district upon what is known as the "Hoctor site." In pursuance of his employment, he performed the service, and, the defendant refusing to pay the sum demanded by him, this suit was begun. The plaintiff alleges that the rate of compensation which he was to receive was not fixed other than that he was to be paid the usual, reasonable and customary compensation for such services, which is $3\frac{1}{2}$ per cent. of the cost of labor and material in the construction of the proposed building, and that the cost of constructing complete such a high school building as that contemplated by the plans and specifications prepared by him, including all labor and material necessary for its occupancy, would have been not less than $160,000, and that his compensation upon the basis of $3\frac{1}{2}$ per cent. of the above sum is $5,600, which he maintains is the usual, reasonable and customary fee for like services. He admitted having received $1,900 from the school district, but alleged there was still due to him a balance of $3,700 for

his services, for which he prayed judgment. The question of services as a supervising architect during the course of construction does not enter into the consideration of this case. The answer denied generally and specifically the allegations of the petition, and prayed for a judgment of dismisal. Issues were joined, and upon the trial the plaintiff was awarded a verdict for $1,127.48, upon which judgment was rendered. The defendant took no exceptions to the judgment, but the plaintiff, being dissatisfied with the amount of the recovery, brings the cause to this court for review.

Upon the question of the probable cost of the construction of a high school building to be erected in pursuance of the plans and specifications furnished by the plaintiff, the record discloses that the allegations of the petition were fairly supported by the testimony. Upon the question of compensation, the plaintiff's testimony was supported by that of four or five skilled architects called by him as expert witnesses, and who testified, in answer to hypothetical questions and from an inspection of the exhibits, that the customary, usual and reasonable value of an architect's services such as those rendered by the plaintiff is $3\frac{1}{2}$ per cent. of the cost of the entire building finished, complete and ready for occupancy, and that this rate is general throughout the country. The testimony of some of the expert witnesses is to the effect that this fee is prescribed by the "American Institute of Architects," one or more of them being active members of that organization.

The defendant introduced no direct evidence to contradict the testimony offered on the part of the plaintiff upon the question of the reasonableness of the rate of compensation, and the latter maintains that for this reason, among others, the verdict of the jury cannot be sustained under any system of computation that may be adopted, except upon the theory that the jury limited the amount of the recovery to compensation for preliminary sketches and drawings, and contends that, if this was the theory

of the jury, no legal justification therefor can be found in the record. The plaintiff also charges that the verdict may be accounted for because of prejudice and passion on the part of the jury.

Counsel for plaintiff argue that, in view of the evidence and the instructions, the jury should have merely confined their attention to the task of computing $3\frac{1}{2}$ per cent. upon \$160,000 and bringing in a verdict for that sum in favor of their client. They complain and charge that instead of doing this, the jury arbitrarily and in defiance of the undisputed testimony returned a verdict for less than 1 per cent. upon that sum. They concede that expert or opinion evidence is not always binding upon the jury, because there are many instances in which there are no fixed rules by which the value of services may be determined, concerning which experts are called upon to testify, such as the professional services of attorneys, but they contend that it is otherwise with reference to the professional services of an architect, the value of which they argue may be almost as certainly established and computed as the price of the most staple articles of commerce, and that for this reason, among others, the jury in the present case were bound by the expert evidence of skilled architects with reference to the value of the services of a brother architect, the same as it would be in a case involving the establishment of the usual and customary wage of brick layers, carpenters and trades workers generally, or "the going wage" of farm hands, where the testimony is all identical upon a given point and undisputed. They insist that the evidence upon this point submitted by them in behalf of their client's cause may not properly be designated opinion testimony.

We have examined the questions raised by plaintiff's counsel and the principles of law applicable thereto as presented by the record before us, and are unable to adopt their reasoning or to apply the distinctions to the evidence for which they contend. To do so would be to **ignore** and to set at naught the functions of the jurors

in the performance of a solemn duty imposed upon them by the law, by their consciences, and by their oaths. All of the facts in the case, including not only those which may properly be denominated the strictly professional services of the plaintiff, but also the work that was performed by three or four of his assistants and subordinates who were in his employ, were presented to the jury in detail by the plaintiff's testimony upon the direct and the cross-examination, and we are not prepared to say that the jury were not thereby fully enlightened and amply qualified to pass upon and properly determine the issues involved, nor are we disposed to say from the record presented to us that they did not give to all the material facts in evidence before them that careful and deliberate consideration to which they were entitled. The testimony does not show that the services that devolved upon the plaintiff in pursuance of his professional employment were unusually intricate or complicated, and it is disclosed that a part of the work was performed by some of his employees after the usual working hours and on holidays. We do not discover anything in the record to preclude the jury from the free exercise of its judgment as to the weight to be given to the expert testimony and the other evidence submitted. It may be that the court from a submission of the same facts would reach a different conclusion than that arrived at by the jury, but that is not the question before us. Adapting the language of *Kilpatrick v. Haley,* 6 Colo. App. 407, 41 Pac. 508, to the present case: "Expert testimony is entitled to consideration in connection with the facts upon which it is based, and is intended to assist the jury in reaching a conclusion upon the entire evidence; but they should give it only the weight to which, in the light of their own knowledge and experience, they may consider it entitled. Their judgment upon the facts is not to be supplanted by the opinions of witnesses."

It is elementary that there is a clear distinction in regard to a verdict that is based upon testimony con-

cerning facts which are within the personal knowledge
of the witness and a verdict based upon expert or opinion
testimony which gives to the jury the conclusion of the
witness or the opinion he may have formed from a given
state of facts.  This distinction has long been clearly
recognized by the courts, and we do not believe the facts
in the present case exclude it from the application of this
salutary rule.  In a proper case the jury are bound by
the evidence adduced in the former class, but the rule
is not so unyielding in the latter.  The trend of authori-
tative expression upon the subject of expert testimony
does not lie in the direction of unduly enlarging the
sphere of the expert witness in controversies involving
facts that are not unusual or extraordinary, as herein
presented, and for which the experience of the average
citizen will form a criterion.  A reason for this may be
found in the fact that with the passing of the years the
minds of men are being broadened by the diffusion of
general knowledge in every department of human en-
deavor.  To yield to the contention of plaintiff's counsel,
and to hold that the work of the jury as argued by them
"should have consisted merely of computing $3\frac{1}{2}$ per cent.
on $160,000, which would have given $5,600, deducting
the $1,900 paid, and computing interest at 7 per cent. per
annum on $3,700 from July 1, 1901, to May 6, 1907,"
would be equivalent to a denial of the right of the jury to
exercise its judgment as to the weight to be given to the
evidence before it upon questions of fact that are not un-
usually intricate, and to make of that important branch
of our jurisprudence a mere assemblage of automatons
selected and set apart for the merely formal purpose of
recording the opinion of the experts who are called to
testify.  To such procedure we are not prepared to give
our approval.

1 Wharton, Law of Evidence (3d ed.), sec. 454: "When
expert testimony was first introduced, it was regarded
with great respect.  An expert, when called as a witness,
was viewed as the representative of the science of which

he was a professor, giving impartially its conclusions. * * * Apart from the partisan temper more or less common to experts, their utterances, now that they have as a class become the retained agents of parties, have lost all judicial authority, and are entitled only to the weight which a sound and cautious criticism would award to the testimony itself. * * * In this sense we may adopt the strong language of Lord Campbell, that 'skilled witnesses come with such a bias on their minds to support the cause in which they are embarked that hardly any weight should be given to their evidence.'" *Head v. Hargrave,* 105 U. S. 45. Speaking for the court, Mr. Justice Field says: "To direct them (the jury) to find the value of the services from the testimony of the experts alone was to say to them that the issue should be determined by the opinions of the attorneys, and not by the exercise of their own judgment of the facts on which those opinions were given. * * * Other persons besides professional men have knowledge of the value of professional services; and, while great weight should always be given to the opinions of those familiar with the subject, they are not to be blindly received, but are to be intelligently examined by the jury in the light of their own general knowledge; they should control only as they are found to be reasonable. * * * The judgment of witnesses, as a matter of law, is in no case to be substituted for that of the jurors." In support of the rule the court in the above case cites: *Anthony v. Stinson,* 4 Kan. 211; *Patterson v. City of Boston,* 20 Pick. (Mass.) 159; *Murdock v. Sumner,* 22 Pick. (Mass.) 156. Justice Field cites this language from *Murdock v. Sumner* with approval: "The jury were not bound by the opinion of the witness; they might have taken the facts testified by him, as to the cost, quality and condition of the goods, and come to a different opinion as to their value." In *The Conqueror,* 166 U. S. 110, Mr. Justice Brown states the rule: "Testimony as to value may be properly received from witnesses who are duly qualified as experts, but the jury, even if

such testimony be uncontradicted, may exercise their independent judgment; and there is no rule of law which requires them to surrender their judgment, or to give a controlling influence to the opinions of scientific witnesses. * * * While there are doubtless authorities holding that a jury * * * has no right arbitrarily to ignore or discredit the testimony of unimpeached witnesses so far as they testify to facts, and that a wilful disregard of such testimony will be ground for a new trial, no such obligation attaches to witnesses who testify merely to their opinion; and the jury may deal with it as they please, giving it credence or not as their own experience or general knowledge of the subject may dictate." The following additional authorities cited by defendant's counsel fairly support the rule adhered to herein: *Guyon v. Brooklyn Heights R. Co.*, 97 N. Y. Supp. 1038; *McReynolds v. Burlington & O. R. R. Co.*, 106 Ill. 152; *Sioux City & P. R. Co. v. Finlayson*, 16 Neb. 578; *Forsyth v. Doolittle*, 120 U. S. 73; *Bentley v. Brown*, 37 Kan. 14; *Stevens v. City of Minneapolis*, 42 Minn. 136; *Meyers v. Greer & Sons Realty Co.*, 96 Mo. App. 625, 70 S. W. 914.

*Hull v. City of St. Louis*, 138 Mo. 618: "An instruction that told the jury that they are not bound to accept the opinion of expert witnesses, but may give such opinions the weight to which the jury may deem them entitled, 'or may altogether disregard such opinions if from all the facts and circumstances in evidence they believe such opinions unreasonable,' is *held* on rehearing to be proper. Following *City of St. Louis v. Ranken*, 95 Mo. 189."

*Jones & Williams v. Fitzpatrick*, 47 S. Car. 40: "The testimony of experts is merely the expression of opinions, and it is not error in a circuit judge to refuse to set aside a verdict because the amount found by the jury was much less than the experts (the only witnesses examined as to the value of services) thought the services were worth."

58

We have searched the record, and are unable to discover any reversible error upon the points complained of by the plaintiff. The judgment of the district court is therefore

AFFIRMED.