**UNITED STATES of America,**
**Appellant,**

v.

**CITY OF JACKSONVILLE, ARKANSAS,**
**Appellee.**

**No. 15871.**

United States Court of Appeals
Eighth Circuit.

July 9, 1958.

Elizabeth Dudley, Attorney, Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Osro Cobb, U. S. Atty., Little Rock, Ark., and Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

Herschel H. Friday, Jr., and R. Ben Allen, Little Rock, Ark. (Mehaffy, Smith & Williams, Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This is a proceeding in condemnation brought by the United States to determine the just compensation to be paid the defendant City of Jacksonville, Arkansas, for certain property necessary to provide for the construction of an air force base and other military uses incident thereto in connection with the Little Rock Air Force Base, Pulaski County, Arkansas. The property is described as "all right, title and interest of the Town of Jacksonville, Arkansas, in and to the existing water distribution system and the sewage disposal system, both above and beneath the ground, including all pipe, fittings and facilities necessary in connection with the operation and maintenance thereof, together with all necessary easements and rights-of-way for accommodation of the same * * * lying within the boundaries of the Little Rock Air Force Base."

It was contended by defendant that it was entitled to recover as just compensation for the taking of its water distribution system and sewage disposal system the cost of reproduction new less depreciation, while it was contended by the plaintiff that the proper measure of just compensation was limited to the scrap value of the property so taken, to-wit: the salvage value of the pipes and equipment less cost of removal and refilling. Testimony was admitted on both of these theories. The evidence will be further developed in the course of this opinion.

The court submitted two interrogatories as follows:

"Interrogatory No. 1.

"What was the amount of the reproduction cost less depreciation of the pipe, fittings and other equipment involved herein on July 13, 1954?"

"Interrogatory No. 2.

"What was the salvage value of the pipe, fittings and other equipment involved herein on July 13, 1954?"

The court then instructed the jury that its general verdict should be in such amount as it might find to be the fair market value of all the property taken by the government from the City of Jacksonville. Prior to the institution of the condemnation proceeding the government had taken the property described and deposited the sum of $10,500 for the use of the defendant, its estimated amount of just compensation for the property so taken. The sole issue in the proceeding was what amount would justly compensate the defendant for the property appropriated by the government. The jury, in answer to interrogatory number one, found the cost of reproduction new less depreciation of the property taken to be $108,734.39. In answer to interrogatory number two the jury found the salvage value of the pipe, fittings and other equipment taken to be $40,000. At the close of all the evidence plaintiff moved for a directed verdict in its favor on the ground:

"* * * that all of the evidence offered by defendant has been irrelevant. Further, plaintiff moves the Court to strike all of the evidence offered by defendants on the same ground. Plaintiff adds the further ground for its motion that defendant has failed to introduce any evidence concerning the value of the interest in land alone. That is, any proof of the value of the perpetual easement taken by the government by means of this case."

The motion was denied and the case was submitted to the jury on the above noted interrogatories and certain instructions. The jury returned a general verdict for $50,108 and the court thereupon entered judgment, adjudging the just compensation for the taking of the

property here involved to be $50,108, as found by the jury. The government moved for judgment notwithstanding the verdict or for a new trial, which motion was in due course overruled and this appeal followed.

A condemnation proceeding is sui generis in that the defendant is always entitled to judgment for just compensation of the property taken and is in fact endowed with all the characteristics of a plaintiff in a conventional action. The party seeking condemnation, the nominal plaintiff, concedes the right to compensation and presumably is always willing as a matter of fact to pay a certain sum. The purpose of the proceeding is not to determine the right of the plaintiff to take the property, but only to determine the amount which the plaintiff shall be required to pay the defendant as just compensation for the property taken. There must therefore always be a judgment in favor of the defendant-owner of the property. In this connection it is to be observed that the government moved for a directed verdict in its favor. If such a motion should be granted it would in effect result in a judgment that the defendant receive nothing as compensation for the property taken. The only verdict to which plaintiff was entitled was a verdict fixing just compensation for the property taken and the motion presented was not a motion that the jury be directed to return a verdict in favor of defendant for a fixed amount as representing just compensation for the property taken. The sufficiency of the evidence to sustain the verdict where unliquidated damages are sought to be recovered can only be reviewed by this court when that question has been made a question of law by the interposition of a proper motion for a directed verdict. It could not be determined as a matter of law in the instant case that defendant was not entitled to just compensation for the property taken and the motion was properly denied.

It is here argued that the proper measure of damages for the taking of municipally owned easements is nominal damages in the absence of the necessity to substitute, and that the court erred in not so holding, in admitting evidence, and in instructing the jury on any other theory. It is true that where a substitute must be acquired or furnished for the property taken the amount of just compensation is usually the amount of the cost thereof. We have so held where a public highway was condemned which had to be replaced by acquiring and constructing a new highway in its place. In the instant case no substitute or duplicate will be required and we have held in United States v. State of Arkansas, 8 Cir., 164 F.2d 943, 944:

"The fundamental principle is that the public authority charged with furnishing and maintaining the public way, whether it be a highway, a street, or a bridge, must be awarded the 'actual money loss which will be occasioned by the condemnation * * *'. This amount is usually the cost of furnishing and constructing substitute roads."

This is a far cry from holding that the cost of the substitute road is the only measure of damages under all circumstances. As said by us in United States v. State of Arkansas, supra, the amount awarded must be the "actual money loss which will be occasioned by the condemnation". This was apparently the theory upon which the plaintiff tried the case in the lower court as it was not there urged that defendant was entitled to only nominal damages, but on the other hand the government produced evidence as to the scrap or salvage value of the property taken. Having tried the case in the lower court on that theory plaintiff cannot now be heard to assert error in this regard.

It is also urged that the court committed error in admitting evidence of the cost of reproduction new less depreciation, and in permitting the jury to consider the evidence in connection with all the other evidence in the case. It is to be observed that while the jury

in its answer to interrogatory number one found the cost of reproduction new less depreciation to be $108,734.39 it did not award this amount as damages. It was the theory of the defendant that it was entitled to recover as damages the cost of reproduction new less depreciation. The jury did not return a verdict on that basis and defendant has not appealed. We think the jury was entitled to consider that evidence in determining the salvage value of the property. It had before it the physical exhibits showing the condition of the pipe and the testimony of witnesses as to its condition and availability for further use. As said by the United States Supreme Court in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 280, 87 L.Ed. 336:

"It is conceivable that an owner's indemnity should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose."

In Clark v. United States, 8 Cir., 155 F.2d 157, 161, we held that:

"* * * evidence as to the intrinsic value of the improvements should, we think, have been admitted as an aid to the jury in arriving at a decision of the ultimate question of just compensation for the property taken."

The last cited case was followed by the United States Court of Appeals for the Fourth Circuit in Cade v. United States, 4 Cir., 213 F.2d 138. See, also, United States v. Becktold Co., 8 Cir., 129 F.2d 473; United States v. Wise, 4 Cir., 131 F.2d 851; United States v. Twin City Power Company, 4 Cir., 248 F.2d 108. On this phase of the case we think the court committed no prejudicial error either in its rulings on admissibility of evidence or in its instructions to the jury.

It is contended that the court erred in denying its motion to set aside the jury's answer to interrogatory number two which required the jury to determine the salvage or scrap value of the property taken. It was plaintiff's contention that the measure of damages to which defendant was entitled to recover was the scrap or salvage value of the property taken and in response to this theory this interrogatory number two was submitted to the jury for its answer, without objection by plaintiff. In the circumstances of this case we think the proper measure of damages was the scrap or salvage value of the property taken. The property had no going concern value and defendant would not be required to substitute or duplicate the property taken. If, therefore, there was substantial evidence to sustain the answer to this interrogatory it should be allowed to stand. It was plaintiff's contention that the salvage value did not exceed $11,800 and its evidence supported that contention. There was before the jury, however, testimony as to the original cost of the pipe, fittings and other equipment, and evidence as to their age, condition, probable life and usefulness. Thus plaintiff's witness Finefield, in calculating the salvage value, ascertained the original cost and from this deducted a depreciation which he fixed at seventy per cent on pipe and fifty per cent on fittings. Defendant's witness, Mr. Mehlburger, however, fixed the depreciation at about thirteen per cent. If Mr. Finefield's estimate of the cost be accepted by the jury and Mr. Mehlburger's opinion as to the depreciation, the result would exceed $40,000 as the scrap value of the property taken. With these figures before the jury it cannot be said that there was not substantial evidence to sustain the findings of the jury as to scrap value. The jury was not bound to accept any particular depreciation factor but might select one of two or more divergent opinions. Burnett v. Central Nebraska Public Power & Irr. Dist., 8 Cir., 125 F.2d 836; Samuelson v. Central Nebraska Public Power & Irr. Dist., 8 Cir., 125 F.2d 838; Equitable Life Assur. Soc. of United States v. Carmody,

8 Cir., 131 F.2d 318. On this element of damages there was a conflict of testimony. The jury was also aided in evaluating the testimony as to the value of this salvage by having seen and observed its condition. As said by us in Burnett v. Central Nebraska Public Power & Irr. Dist., supra [125 F.2d 838]:

"* * * a jury cannot be required to substitute the opinion of expert witnesses for its own practical judgment on all the evidence, even in cases where the estimate of experts may not have been specifically contradicted. Lincoln Land Co. v. Phelps County, 59 Neb. 249, 80 N.W. 818; Davis v. School District, 84 Neb. 858, 122 N.W. 38. While the jury is not at liberty, of course, arbitrarily to ignore * * * any other competent evidence, it has the absolute right to appraise it and to determine what weight shall be given to it or any part of it, in the light of all the general facts and circumstances developed on the trial, and of its own common knowledge and ordinary experience."

In Samuelson v. Central Nebraska Public Power & Irr. Dist., supra, in answering a contention similar to that now before us, we said [125 F.2d 840]:

"As we have indicated in the Burnett case, supra, a jury is never required, in an ordinary condemnation proceeding, to accept as conclusive the estimates of value made by expert witnesses on either side. There ordinarily is in such cases some general testimony as to the location, character, use, etc., of the property, and other pertinent facts usually also are developed on direct or cross examination of the witnesses. All of this the jury is entitled to consider, together with any reasonable inferences which may be made therefrom, and it may properly exercise its own deliberate judgment on the amount of the damages, from the evidence as a whole, in the light of its common knowledge and ordinary experience, giving to the estimate of the expert witnesses only such weight as it conscientiously feels they are entitled to receive under all the circumstances."

What is said by us in Equitable Life Assur. Soc. of United States v. Carmody, supra [131 F.2d 321], with reference to the elements that may be considered by the jury in determining value is here apposite. We there said:

"A full reading of the testimony of the debtor's witnesses shows that they had taken into account and described on the witness stand such various elements entering into the value of the property involved as its location, topography, soil formation and quality, existence of depreciating defects and blemishes, nature and condition of improvements, et cetera. Appellant overlooks, we think, what we have had occasion to point out in other cases, that the determination of land value in an ordinary case is not necessarily a mere alternative choosing between the arithmetical estimates of opposing experts."

We conclude that the valuation of the scrap or salvage here involved as fixed by the jury in its answer to interrogatory number two is sustained by substantial evidence and plaintiff's motion to set it aside was properly denied.

We think the proper measure of damages in the circumstances of this case was, as contended by plaintiff, the scrap or salvage value. The jury, having found that value to be $40,000 should have returned a verdict in that amount. Rule 49(b), Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part that:

"When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict * * *."

Here the answer to interrogatory number two is inconsistent with the general verdict. In these circumstances the answer to the interrogatory, in effect, supersedes the general verdict. We have considered all the other contentions urged by plaintiff but think them without merit.

The case is therefore remanded to the trial court with directions to enter judgment in favor of the defendant in the sum of $40,000, less the $10,500 already paid, with interest as provided by law, pursuant to the answer to interrogatory number two, notwithstanding the general verdict, that amount representing just compensation to which defendant is entitled.