UNITED STATES of America,
Appellant,

v.

3,788.16 ACRES OF LAND, MORE OR
LESS, Situate IN EMMONS COUNTY,
State of NORTH DAKOTA, and Noel
E. Woodland, et al., Appellees.

Nos. 20076, 20077, 20078, 20095 and 20179.

United States Court of Appeals,
Eighth Circuit.

March 10, 1971.

Shiro Kashiwa, Asst. Atty. Gen., Harold O. Bullis, U. S. Atty., Fargo, N. D., Eugene K. Anthony, Asst. U. S. Atty., Fargo, N. D., S. Billingsley Hill, Raymond N. Zagone, Carl Strass, Attys., Dept. of Justice, Washington, D. C., for appellant.

Robert Vogel, Mandan, N. D., Floyd B. Sperry, Bismarck, N. D., for Josephine Davenport, Laurence Woodland, Noel Woodland, Myrtle G. Watkins and Earle D. Hartung.

Robert Chesrown, Linton, N. D., Milton K. Higgins, Bismarck, N. D., for Homer Woodland.

Before VAN OOSTERHOUT, and BRIGHT, Circuit Judges, and NEVILLE, District Judge.

VAN OOSTERHOUT, Circuit Judge.

These five cases are before us upon appeals taken by the United States from final judgments entered in each case awarding claimants compensation for land taken by the United States by condemnation for the Oahe Reservoir. Condemnation complaint was filed June 16, 1965. The right of condemnation is not disputed. The Government took possession of the condemned land by order dated June 28, 1965, and has remained in possession ever since.

The final judgments awarding compensation, based on trial and jury ver-

dicts, were filed on July 28, 1969, in cases Nos. 20076, 20077 and 20078, and on October 6, 1969, in No. 20095, and on December 2, 1969, in No. 20179.

Such judgments aggregated approximately $450,000. Timely appeals were taken by the United States from each of such judgments. The trial court found that the State of North Dakota had no interest in the condemned land. The State of North Dakota has taken no appeal. The cases have been consolidated upon appeal. Common questions of fact and law are presented.

The issues presented by this appeal as stated by the United States are:

"1. Whether, under North Dakota law, the title of the United States to public lands was extinguished by the gradual movement of the Missouri River after an avulsion.

"2. Whether ownership of the abandoned bed of the Missouri River was improperly declared to be in certain private parties, rather than in the United States, the State of North Dakota, or other private parties."

The land owners awarded the judgments here involved assert that the issues presented by the United States are not properly before this court for the following reasons:

1. The title issue was resolved by judgment of the trial court filed November 13, 1968. That no timely appeal was taken from such judgment and thus the court has no jurisdiction on the title issues.

2. The United States is bound by its stipulation made at the damage stage of the trial that the land owners owned the condemned land claimed by them and that no title issue was involved.

3. The title issues the United States is now raising were not raised nor considered in the trial court and thus cannot be considered upon appeal as a basis for reversal.

■ Consideration will first be given to the contentions made by the land owner claimants. The United States, the land owners involved in this appeal and the State of North Dakota are the parties involved in this litigation. The State of North Dakota by its failure to appeal has no further interest in this litigation. After a lengthy title trial, the title issue was resolved in favor of the present land owner claimants and against the United States and the State of North Dakota by a judgment entered on November 13, 1968. The basis of such judgment is set out in a well-considered memorandum opinion, not reported, filed on October 17, 1968. The memorandum opinion includes a statement, not here challenged, as to the procedure to be followed in adjudicating issues presented by the condemnation, which reads:

"Long prior to trial it was agreed by the parties that the individual ownerships were not to be considered or determined herein, and that the sole issue herein is the adjudication of ownership asserted by the Plaintiff (and the State of North Dakota), and the landowners as a group, to certain portions of the land described in the Complaint in condemnation. It was understood that after such determination, any disputes between the individual landowners as to extent of their ownerships, or location of boundaries, are to be adjudicated prior to trial on the merits as to reasonable compensation for the taking of the various tracts."

During the course of the title trial, Mr. Garaas, representing the Government, requested the landowners to state what portion of the land in controversy each claimed. Mr. Sperry, representing the landowners, stated:

"Insofar as the controversy or any such that may develop among the landowners, that's wholly immaterial for this proceeding. I think we agreed that this particular part of the title action should be limited to the claims of the Government on the one side, and all of the landowners on the other."

The record also shows the following:

"THE COURT: Well, very frankly, Mr. Garaas, I don't understand the

reasons for this request. Now isn't it understood that that has nothing to do with the determination of this question that's before his Court now; in other words, was it not understood of record and among all counsel, that after this determination, then that, if there are conflicting issues—claims as between the other owners—then that both matters must be disposed of before we can proceed with the trial on the merits, insofar as the compensation that those owners receive, because, of course, that determination may involve who would be entitled to accretion, and so forth. But has that not been the understanding of—

"MR. GARAAS: Yes, Your Honor, but all I'm trying to do is shift it forward, so we can get it going.

"THE COURT: Well, let's wait until we get done with this trial, before you get going on the next one."

Thus it would clearly appear that the November 13, 1968, judgment entry rejecting the Government's title claims was not a final judgment disposing of the litigation. Rule 54(b), Fed.R.Civ.P., provides that where multiple claims or multiple parties are involved the court may direct entry of final judgment as to one or more but fewer than all of the claims or parties "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." No such 54(b) determination was made by the court. In such situation, the applicable part of the rule reads:

"In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

We find that no foundation for an interlocutory appeal was laid under 28 U.S.C.A. § 1292(b). The appeals from final judgment bring before us for review the determinations made by the trial court in the title judgment dated November 13, 1968. See Garrett v. United States, 8 Cir., 407 F.2d 146, particularly footnotes 2 and 5; Bynum v. Liberty National Bank & Trust Co., 10 Cir., 338 F.2d 412, 413.

Subsequent to the title trial all disputes among the land owners with respect to title as between themselves were resolved. A stipulation was signed by the United States and the claimant landowners and filed on May 21, 1969, which reads:

"It is hereby STIPULATED by and between Eugene K. Anthony, Assistant United States Attorney and one of the counsel for the Plaintiff herein, and Floyd B. Sperry, counsel for Noel E. Woodland, Earle D. Hartung, Myrtle G. Watkins and Josephine Davenport, and Milton K. Higgins, counsel for Homer G. Woodland, that the acreage on the following described tracts is fixed and agreed upon by all parties and for purposes of the trial to establish just compensation for the taking of said tracts by the United States of America, as follows:

1. Tract No. 3518 (Homer G. Woodland) comprises 2000.38 acres; Tract No. 3518E (Homer G. Woodland) comprises 21.90 acres.

2. Tract No. 3505 (Noel E. Woodland) comprises 120 acres; Tract No. 3511 (Noel E. Woodland) comprises 445.77 acres; Tract No. 3511E (Noel E. Woodland) comprises 99.20 acres.

3. Tract No. 3509 (Earle D. Hartung) comprises 151.37 acres.

5. Tract No. 3446 (Myrtle G. Watkins and Josephine Davenport) comprises 120 acres."

Case No. 20095 involving tracts 3518 and 3518E claimed by Homer G. Woodland was reached for trial on the compensation issue before a jury on May 26,

1969. The record of such trial includes the following:

"THE COURT: Counsel have informed me that there is no question of title; that the amount of acreage can be stipulated and will be stipulated;
* * *"

* * * * * *

"THE COURT: Now, gentlemen, in this case here, there is a stipulation agreement, which is on file, and, gentlemen, do you wish to make a record of this at this time, or not, or just call the attention of all Counsel to the fact that there is such a stipulation?

"MR. ANTHONY: The Government would be willing to ratify the stipulation agreement on file in the record, Your Honor, insofar as there are 2,-000.38 acres in Tract No. 3518, which is a fee taking, and 21.90 acres in 3518E, which is a flowage easement, and we would further stipulate that the date of taking of both such tracts is June 16th, 1965.

"MR. HIGGINS: That's agreeable to me, Bob. We worked the thing out."

The remaining cases before us were reached for trial jointly on June 23, 1969. The record shows that prior to the selection of a jury a record was made which reads:

"THE COURT: Very well. Now is there any question of title involved?

"MR. SCALZO: I hope not, at this state, Your Honor.

"THE COURT: I hope not, too.

"MR. SPERRY: I believe we have agreed on the record.

"THE COURT: The record will show then that there is no such ques-tion. Is there any dispute as to the amount of acreage?

"MR. SCALZO: No, Your Honor.

"MR. SPERRY: We've agreed on that, too, and the record so shows.

"MR. ANTHONY: I think that there's a written stipulation, Your Honor, affecting that, in the files.

"THE COURT: Fine.

"MR. SPERRY: As to three of them, and as to the fourth one, we stipulate it in open court."

(Mr. Scalzo and Mr. Anthony represented the United States. Mr. Sperry represented the landowner claimants.)

It was further stipulated that tracts 3508 and 3508E not covered in the filed stipulation consisted of 774.14 acres and 10 acres respectively owned by Laurence Woodland.

The court in the judgment entry in each case found on the basis of the stipulations made the amount of land owned by each claimant and that the named landowner is entitled to compensation for the taking of the land.[1]

It is well settled that stipulations of fact fairly entered into are controlling and conclusive and courts are bound to enforce them. Fenix v. Finch, 8 Cir., 436 F.2d 831 (January 19, 1971); Furniture Forwarders of St. Louis v. Chicago, R. I. & P. R. Co., 8 Cir., 393 F.2d 537, 539; Osborne v. United States, 8 Cir., 351 F.2d 111, 120.

As well stated by Judge Mehaffy in *Fenix*, supra:

"The general rule is that parties are bound by stipulations voluntarily made and that relief from such stipulations after judgment is warranted only un-

---

1. The finding as to Homer G. Woodland reads:
"Finds that these proceedings have been conducted according to law and the Court has jurisdiction of the parties and the subject matter; that it was stipulated in open Court by and between the parties that the total acreage taken in fee simple for Tract No. 3518 was 2000.38 acres and that Tract No. 3518E upon which a flow-age easement was taken consisted of 21.90 acres, and it was further stipulated by and between the parties that the date of taking of said tracts was June 16, 1965, and that Homer G. Woodland is the owner thereof and entitled to compensation for said tracts of land."
Similar findings based on the stipulations are found in the other judgment entries.

der exceptional circumstances. Farmers Co-op. Elevator Ass'n Non-Stock [of] Big Springs, Neb. v. Strand, 382 F.2d 224, 231 (8th Cir. 1967), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967); Ehlers v. Vinal, 382 F.2d 58 (8th Cir. 1967)." 436 F.2d 831, 837.

■ The stipulation made in our cases was clear and unambiguous. The stipulation was relied upon by the parties, by the jury and the trial court. No effort was made at any time in the trial court to obtain relief from the stipulation. At we pointed out in Osborne, relief from a stipulation should first be sought in the trial court. We find no exceptional circumstances nor any basis for granting United States relief from the stipulation.

We set out the background upon which the stipulation was made. The issue tried in the title suit is thus stated by the trial court:

"In Plaintiff's brief, counsel states, in part, that: 'It can also be stated that the primary issue in dispute in this lawsuit is whether or not an avulsive change occurred between the 1899–1900 avulsion and the 1929–1930 avulsion leaving an area described as Lots 5, 6, 7, 8 and 9 of Section 11, Lot 9 and part of Lot 7 of Section 12, Lot 1 and the NE¼ NW¼ of Section 14 in place, and which avulsion is alleged by the United States to have occurred sometime between 1907 and 1911 * * *.' Thus the basic position or contention of the Plaintiff is stated, with the resulting claim that in this area are three areas of 'fast land' (defined as land which was in existence at the time of the 1886 and 1899 surveys) which still exist."

The court's findings upon such issue are:

"The overwhelming weight of the credible evidence is, and the Court so finds and concludes, that the lands in the area here involved were completely washed and eroded away by slow and gradual degrees by the Missouri River and were thereby destroyed, and that new lands were formed by accretion; that, at the time of the taking, there was no 'fast land' in this area; that the contention of the Plaintiff that such 'avulsion change' hereinbefore referred to took place is erroneous and lacks evidentiary support; that the Plaintiff had no right, title to, claim against, or interest in any of said premises (prior to the taking thereof by Order of June 28, 1965); that the claims of the State of North Dakota are without evidentiary support; that Woodland Island is not an island formed from the Missouri River channel; that said State of North Dakota, at the time of the taking by the Plaintiff on June 28, 1965, had no right, title to, claim against or interest in any of said premises; and that the landowners herein were the owners of the various and respective tracts here involved, free from all claims of said Plaintiff and the State of North Dakota at the time of said taking by the Plaintiff on June 28, 1965, and are entitled to judgment in their favor herein."

We are completely satisfied that the trial court's fact findings, to the effect that the 1907–1911 avulsion alleged and relied upon by the Government did not occur, are supported by overwhelming evidence and that such findings and the conclusion based thereon are not clearly erroneous. We have no doubt that Government counsel at the time of the stipulations realized that an appeal on the title issue which it raised would be futile. Counsel for the Government on oral argument expressly conceded that its appeal is not based upon the intervening avulsion theory decided adversely to it by the trial court.

More than sixty days after the November 13, 1968, judgment the Clerk of the District Court by letter advised the parties (erroneously) that since the time for appeals had expired he was returning the exhibits. He requested and obtained receipts for the exhibits from the parties.

United States has at no time made a request to the trial court for findings on the title issues which it now attempts to raise. United States has failed to demonstrate that such issues were fairly raised in or considered by the trial court. United States acquiesced in the trial plan that title issues be resolved before reaching damage issues. The Government took no steps to lay a foundation under Rule 54(b) or 28 U.S.C.A. § 1292(b) for an interlocutory appeal on the title issue.

■ It was in this setting that the stipulations hereinabove set out were made. The stipulations were made deliberately, voluntarily and without any fraud or coercion. United States at no state of the compensation phase of the trial questioned the titles of the landowner claimants to the condemned land. No attempt was made in the trial court to repudiate, modify or qualify the stipulations made.

After the condemnation money awards were made, the Government took the pending appeals and urged as a basis for reversal the grounds stated at the beginning of this opinion. We are convinced that litigation on such issues or any other title claims the Government might urge are waived, abandoned and foreclosed by the stipulations to the effect that no question of title remained in the case and that the claimant landowners were owners of the stipulated acreages.

■ We are of the view that there is considerable merit to the landowners' third contention to the effect that the Government did not fairly raise the issues which it is here asserting in the trial court and that such issues were not considered by the trial court and hence cannot be considered upon appeal. See Zunamon v. Brown, 8 Cir., 418 F.2d 883, 888; City of North Kansas City, Missouri v. Sharp, 8 Cir., 414 F.2d 359, 364; United States v. City of Jacksonville, Arkansas, 8 Cir., 257 F.2d 330, 333.

Since our holding on the stipulation issue is dispositive of these appeals, we find it unnecessary to consider in detail whether the asserted issues were properly raised. The legal effect of the stipulations was to waive and abandon any right of appeal on any claim of the Government to title to the land here involved.

The judgments are affirmed.