### CONGOLEUM INDUSTRIES, INC., Petitioner,

v.

### CONSUMER PRODUCT SAFETY COMMISSION, Respondent.

### No. 75–3112.

United States Court of Appeals, Ninth Circuit.

Aug. 14, 1979.

Ray S. Bolze, Howrey & Simon, Washington, D. C., for petitioner.

Robert V. Allen, Dept. of Justice, Washington, D. C., for respondent.

Before TRASK and KENNEDY, Circuit Judges, and THOMPSON,* District Judge.

TRASK, Circuit Judge:

This administrative action was commenced September 19, 1972, upon issuance by the Federal Trade Commission (FTC) of a complaint against Congoleum Industries, Inc. (Congoleum) alleging that Congoleum had sold carpeting, type Endureze 9113,

---

* Honorable Bruce R. Thompson, United States District Judge, for the District of Nevada, sitting by designation.

which failed to conform to the Flammable Fabrics Act, as amended. 15 U.S.C. §§ 1191, *et seq.* (App. 17–21).[1] There ensued a trial before a FTC Administrative Law Judge (ALJ) on February 20, 1973, and the record was closed in July 1973. On May 14, 1973, the newly created Consumer Product Safety Commission (CPSC) began operations and this proceeding was then transferred from the FTC to the CPSC.[2] This court has jurisdiction pursuant to 15 U.S.C. § 1193(e)(1).

I

Based upon the record made at trial, beginning on August 3, 1973, the complaint counsel, the Director, Bureau of Compliance of the CPSC and the attorney for respondent, Congoleum, filed a joint stipulation requesting the ALJ to enter an initial decision dismissing the complaint against Congoleum with prejudice (App. 50–51), and to certify such initial decision to the CPSC with a favorable recommendation that the Commission concur in such dismissal.[3]

On August 3, 1973, the ALJ, without acting on the motion to dismiss the complaint, certified said motion to the Commission "for consideration of the policy questions raised therein." By order of October 9, 1973, the Commission ordered petitioner and complaint counsel to file briefs in support of their respective positions. On November 6, 1973, the parties filed a "Summary of Proceeding," a joint statement of facts and circumstances in support of the stipulated motion for dismissal. This Summary was again signed by complaint counsel, the Director, Bureau of Compliance, Consumer Product Safety Commission, and the attorney for respondent, Congoleum. (App. 52–67). The Summary goes to some length in reciting the history of the complaint, the relationship of the FTC as well as the CPSC to the complaint and some of the many tests that had been made of the flammability of the carpeting with a predominately passing mark of the product. It concluded by again saying in part:

"Based on the evidence and particularly the overwhelming predominance of passing test results over failing test results, the parties believe that the recommended action would strictly adhere to currently published policies of this Commission relating to Flammable Fabrics Act enforcement.

1. The Flammable Fabrics Act, 15 U.S.C. §§ 1191–1204, was enacted June 30, 1953 and was amended on December 14, 1967. The Act, as amended, prohibits the introduction or movement in interstate commerce of fabrics, including carpets and rugs which are flammable within a "Standard" of flammability established by the Secretary of Commerce.

2. Under the Consumer Product Safety Act, 15 U.S.C. §§ 2051–81, the CPSC was obligated to formulate its order as if the case had been prosecuted to its conclusion by the FTC under the Federal Trade Commission Act, *see* 15 U.S.C. §§ 1194(b), 2079(e)(3), and we therefore treat the order as such.

3. "STIPULATION"

"IT IS HEREBY STIPULATED by complaint counsel, the Director of the Bureau of Compliance, Consumer Product Safety Commission, and counsel for respondent, that the Administrative Law Judge should, and is hereby requested to, enter an Initial Decision dismissing the complaint against Congoleum Industries, Inc., Federal Trade Commission Docket No. 8896, with prejudice and certify such Initial Decision to the Consumer Product Safety Commission with a favorable recommendation that that Commission concur in such dismissal.

| | |
|---|---|
| Aug. 2, 1973 | /s/ Charles F. Simon |
| Date | Complaint Counsel |
| | /s/ Edward B. Firch |
| | Director, Bureau of Compliance Consumer Product Safety Commission |
| 1 August 73 | /s/ F. Wallace Adair |
| Date | Attorney for Respondent Congoleum Industries, Inc." |

App. 50–51.

"In the light of these circumstances, it is respectfully requested that this Commission authorize the dismissal of the actions against Congoleum Industries, Inc. in Docket No. 8896 When Before Federal Trade Commission, Civil Action No. 4977 and Civil Action No. 72–C–924." App. at 66.

The document was again signed by complaint counsel, the Director, Bureau of Compliance, Consumer Product Safety Commission, and the attorney for respondent, Congoleum.

■ Petitioner argues strongly that it was reversible error for the ALJ and the Commission to ignore the two stipulations described above. We suggest that petitioner is mistaken. Counsel misread the stipulation when they assert that it is "binding" on the parties. It is true that stipulations of fact, when fairly entered into, are controlling on the participating parties and on the trier of fact without further evidence. Thus, counsel may stipulate that a certain tract of land whose boundaries are defined, contains 99.20 acres. Evidence need not be taken and the size of the tract stands established by the stipulation. *United States v. 3,788.16 Acres of Land*, 439 F.2d 291 (8th Cir. 1971). However, it is a different matter for counsel to stipulate as to what a third person must do or should do when he is not a party to it. Thus, the stipulation of counsel here that the ALJ "should, and is hereby requested to" dismiss the complaint, amounts only to a good faith agreement to join in a request that the ALJ and the Commission take certain action. The words are not those of an established agreement, but precatory language in the nature of a request or entreaty. It tells the ALJ that the signers agree upon what should be done in a particular situation. But it does not bind the ALJ although he might well be affected by its existence. The responsibility of the ALJ is to the Commission by whom he is employed. It is to establish facts based upon evidence, and to make recommendations as to what those facts may indicate. The ALJ here properly fulfilled his responsibility.

II

Following the trial of the case by the ALJ in 1973 Congoleum filed with the judge a "Motion to Enter a Decision of Dismissal and Certify with Recommendation of Concurrence" (App. 52) upon the ground that there was "insufficient justification" for the issuance of the complaint or of a cease and desist order and, also, that there was insufficient public interest to warrant a continuation of the proceeding.

In their answer to the motion, complaint counsel and the Director of the Commission's Bureau of Compliance, without expressly agreeing with the factual statements, concurred in the action proposed. In response to the order, the attorney for Congoleum and the attorney for CPSC joined in a 16-page Summary of the facts and circumstances which led to the motion and the stipulation to dismiss.

It recited how samples of six different carpet styles including style "Endureze 9113" were obtained and only the Endureze sample failed the test. The FTC then was required to produce other samples. All of these six samples passed the test except Endureze, which failed. Considering this a confirming test, FTC (then still enforcing the Flammability Act) issued an order to stop all sales and distribution of Endureze and a seizure was requested of all of that carpeting. Of eight samples taken from the same rolls which had failed FTC tests, all produced passing tests when conducted by independent laboratories. Numerous other tests were conducted.

"In total, 118 flammability tests were conducted on 'Endureze' 9113 carpet between October 28, 1971 and March 23, 1973, with 25 passing test results and 4 failing test results in the FTC laboratory. None of the test results were on the original formulation referred to below and 7 out of these 9 tests were passing results; 109 of the test results were on the new formulation and 107 of these 109 tests were passing results. One of the FTC's failing tests was followed by a subsequent passing test by the FTC on

the same roll of carpet. Respondent had 55 passing test results in its own laboratory and 34 passing test results which were conducted by 4 independent laboratories on 'Endureze' 9113 carpet." App. at 61.

The parties entered into stipulations which were accepted in evidence as to the 118 tests.

"In stipulating these 118 tests, Commission counsel and respondent's counsel agreed that:

"These tests purport to be conducted in accordance with the Standard for the Surface Flammability of Carpets and Rugs (DOC FF 1–70), and that these test reports may be received in evidence in this proceeding without witnesses and without objection by either party, except that either party reserves the right to object to the probative value of such test reports." App. at 62.

The Summary was dated November 5, 1973, and signed by the complaint counsel, the Director of Bureau of Compliance, Consumer Product Safety Commission, and the attorney for Congoleum. No explanation was forthcoming to explain why tests of the FTC showed failures and tests by Congoleum and independent, but reputable, laboratories routinely showed passes.

On May 31, 1974, the CPSC filed its Opinion, in which it denied, without prejudice, the motion of Congoleum to dismiss the proceeding against it, and directed that the matter be returned to the ALJ to prepare an initial decision on the merits. On November 12, 1974, the ALJ filed his initial decision-making findings of fact and established a standard to be used as a basis on which to determine the surface flammability of carpets and rugs.[4]

### III

The ALJ suggests no reason in his findings to logically explain why the failing tests obtained were largely those of the Commission.[5] He finds no scientific reason for it and concludes that they are accurate.

---

4. A summary of the test method in the Standard is:

"2. Pursuant to such authority, the Secretary of Commerce, on April 15, 1970, promulgated the 'Carpets and Rugs (Pill test)', 'Standard for the Surface Flammability of Carpets and Rugs (DOC FF 1–70)'. This Standard, attached hereto as Appendix 1, sets out in technical detail the test procedures to be utilized to determine the surface flammability of carpets and rugs. Section .3 'General requirements' states under 'Summary of test method':

"'This method involves the exposure of each of eight conditioned, replicate specimens of a given carpet or rug to a standard igniting source in a draft-protected environment, and measurement of the proximity of the charred portion to the edge of the hole in the prescribed flattening frame.'

. . . . .

"'At least seven of the eight specimens shall meet the test criterion in order to conform with the Standard.'

"Under 'Test Procedure', the Standard gives detailed and specific instructions for conducting the test for flammability. In substance, the procedures require that eight specimens, each 9″ × 9″ be cut from a 'sample of the material representative of the lot', and be tested by igniting with an incendiary pill, and 'Eli Lilly No. 1588 methenamine timed burning tablet or an equal tablet', in the center of each. Under the controlled and prescribed conditions of the Standard, the burning of each specimen of the carpet from the center outward was then to be observed. The Standard provided that:

'[i]f the charred area does not extend to within 2.54 cm. (1.0 in.) of the edge of the hole in the flattening frame at any point for at least seven of the eight specimens, the carpet or rug meets the acceptance criterion.' "

App. at 80.

5. "34. The passing Federal Trade Commission tests, and the passing tests obtained by Congoleum and its outside firms, do not mean that the failing tests in the Commission's laboratory were mistakes, were improperly done, or that they are invalid in some manner. On the contrary, as already set out in prior findings, the failing tests were valid and properly done. The same Federal Trade Commission technician who obtained passing tests on Congoleum's Endureze 9113 also obtained significant failing tests. As described, in one instance of 'new formulation' Endureze 9113, six (6) out of eight (8) specimens failed (CX 6). The failing tests were obtained on different dates, on carpet obtained from different sources, and manufactured at different times. Properly conducted failing tests therefore, cannot be disregarded because other tests, even a large number, showed passing results.

"35. What the record in this matter shows is that respondent's Endureze 9113 carpet is

Respondent Congoleum likewise can find no scientific reason for the disparity, but concludes that it just have been error in testing. In the absence of a logical and persuasive explanation we have no alternative but to credit those findings of the agency.

This leaves us with the final problem, the propriety of the remedy.

■ The order promulgated here requires Congoleum to obtain and deliver to the Commission for testing, a sample from every available roll of Endureze 9113 carpet not previously tested by the FTC and within 60 days to submit such samples to the CPSC for testing. Tests are to be made in the Commission's laboratories or in a laboratory designated by it, all at respondent's costs.[6] No further action is required of Congoleum unless one of such samples fails a flammability test. We affirm this portion of the order.

■ The order, moreover, requires Congoleum to cease and desist directly or through any agencies from manufacturing for sale or offering for sale or transporting in commerce any carpet or rugs which fail to conform to an applicable standard under the provisions of the Flammability Fabrics Act. It continues:

"IT IS FURTHER ORDERED that, where samples obtained from rolls of Endureze 9113 are tested under Part II hereof and fail to meet the Standard for the Surface Flammability of Carpets and Rugs DOC FF 1–70), the carpet in such rolls shall be deemed to be flammable and respondent shall take the following actions:

"1. Where carpet from such rolls of Endureze 9113 has been installed, notify the purchaser thereof of the flammable nature of such carpet. In the event the original purchaser of such carpet is no longer in possession of the premises where it was installed, notify the person or firm in possession of the premises in lieu of the original purchaser.

"2. Where carpet from such rolls of Endureze 9113 has been purchased for installation, but has not been installed, notify the person or firm in possession of such carpet and endeavor in good faith to recall it, making provision for the return to such person or firm of the purchase price of such carpet.

"3. Where carpet from such rolls of Endureze 9113 remains in the possession of distributors, wholesalers, retailers, or the like, awaiting sale or delivery to the public, notify such persons of the flammable nature of the carpet and endeavor in good faith to recall it, making provision for the crediting to such distributor, wholesaler, retailer, or the like, of the invoice price of such carpet.

"4. Where carpet from such rolls of Endureze 9113 remains in the possession of respondent, or is returned to respondent, reprocess such carpet so as to bring it into conformity with the applicable standard of flammability under the Flammable Fabrics Act, as amended, or destroy it." App. at 101, 102.

The Commission by a majority approved the order proposed by the ALJ. In doing so, however, it acknowledged that neither the Flammable Fabrics Act nor the Federal Trade Commission Act provided any authority to require notification and recall. "However," it said, "the Commission considers this authority to be inherent." App.

---

variable. Some failed to conform to the Standard, was flammable, and was manufactured, transported and sold in violation of the Flammable Fabrics Act. It is most improbable, if not impossible, that the Commission's investigators picked up or otherwise obtained the *only* samples of Endureze 9113 in the country which were not in conformity with the Standard and which were flammable or, at least, not sufficiently flame resistant. The chances against this having happened are so enormous, in the estimate of the undersigned, that such a possibility can be rejected. The conclusion is accordingly inescapable that

quantities of Endureze 9113 were distributed in interstate commerce which failed to conform to the Standard and violated the Act, even though the probability is that most Endureze 9113, both 'old formulation' and 'new formulation', complied with the Standard and the Act."
App. at 92.

**6.** It would seem equitable that the respondent should receive notice of such testing and an opportunity to be present when and where it is to take place.

at 178. No authority supports the statement.

In *Heater v. F. T. C.*, 503 F.2d 321 (9th Cir. 1974), the Commission not only issued a cease and desist order as to unfair trade practices but, in addition, commanded Heater to make restitution of monies acquired by those practices. On appeal, this court was faced with the question of whether the Commission under the "cease and desist" provision possessed the power to order a refund of monies. We held that it did not, and stated:

> "Regardless of how egregious petitioner's conduct, or how unreasonable his reliance on the legality of the operation, the Commission was not given the power to recast the consequences of conduct occurring prior to its entry of an order; Congress was unwilling to subject the operation of a business to the risk of subsequent Commission condemnation." 503 F.2d at 325. (Footnotes omitted).

To underscore this point, we added the following remarks:

> "We sympathize with the Commission's problem. Under the present design of the Act, those sufficiently unscrupulous or reckless to engage in conduct clearly forbidden by the Act may do so until a cease and desist order is entered, escaping with the fruits of the violation. In many situations no individual has a sufficient interest to bring a suit for redress, and a violation of the Act may be quite profitable." *Heater v. F. T. C.*, 503 F.2d at 325 n.16.

> "[R]ecourse for harm suffered before the Commission enters a cease and desist order was left to private suits." *Id.* at 324.

Congress has acted frequently and carefully in vesting the FTC and the CPSC with remedial authority but has never sought to impose the rigorous duties or penalties which the CPSC now presses upon us to approve. We decline to do so.[7]

Chairman Richard O. Simpson of the CPSC in his dissent from the decision of the majority of the Commission here recognized clearly that the Commission had no authority to "order notification, recall, and repurchase of products that fail to conform to standards issued under that Act." Said he:

> "Although the Flammable Fabrics Act is a public safety statute, neither it nor the Federal Trade Commission Act (15 U.S.C. 41 *et seq.*) provides the specific authority to require notification, recall, and repurchase of items that do not conform to standards issued under the Flammable Fabrics Act. Those provisions of the FTC Act that are incorporated into the Flammable Fabrics Act (15 U.S.C. 1194) provide only for the issuance of cease and desist orders upon the finding of a violation of law. The Flammable Fabrics Act only authorizes the extraordinary remedies of seizure and injunction (15 U.S.C. 1195)." App. at 180.

We vacate the remedial orders of the Consumer Product Safety Commission and remand to the Commission for further consideration in the light of this opinion.[8]

---

7. Reliance upon *Warner-Lambert Co. v. F. T. C.*, 183 U.S.App.D.C. 230, 562 F.2d 749 (1977), a recent case, would be misplaced. In that case the suit was to order corrective advertising of a mouthwash. With respect to the Commission's powers to order restitution of monies, the court there pointed out that although the restitution of monies is clearly outside of the Commission's powers, the order for corrective advertising which applies to future activity is a completely different exercise of authority, *id.*, 183 U.S.App.D.C. at 236, 562 F.2d at 757, and an order to cease and desist would be appropriate, *id.*, 183 U.S.App.D.C. at 245, 562 F.2d at 764, to obtain the relief sought.

8. Our holding in the instance case should not prevent the CPSC from effectively dealing with the danger posed by flammable carpet if, after further testing, Endureze 9113 fails to meet the standards of the Flammable Fabrics Act. We note that the CPSC may obtain a notification and recall order from a federal district court, 15 U.S.C. § 57b (Supp.1975), a seizure order, 15 U.S.C. § 1195 or, under proper circumstances, may itself order notification and recall, 15 U.S.C. §§ 2064, 2079(d).