THE STATE ROAD COMMISSION OF WEST VIRGINIA,
*a corporation, et al.*

*v.*

BOARD OF PARK COMMISSIONERS OF THE CITY OF HUNTINGTON,
*a corporation, et al., etc.*

(No. 12843)

Submitted February 10, 1970.          Decided May 5, 1970.

No appearance for plaintiffs in error.

*George S. Wallace, Jr., William N. Matthews,* for defendants in error.

HAYMOND, JUDGE:

This is an eminent domain proceeding instituted December 3, 1965 in the Circuit Court of Cabell County by the petitioners, The State Road Commission of West Virginia, a corporation, and Burl A. Sawyers, State Road Commissioner of West Virginia, in which the petitioner The State Road Commission of West Virginia, a corporation, sometimes herein referred to as road commission, acquired title to and possession of certain easements and rights-of-way for the construction of a State road as a part of the system of primary roads and highways of this State over and upon certain land owned by the defendant, Board of Park Commissioners of the City of Huntington, West Virginia, a corporation, a governmental agency possessing the right of eminent domain, sometimes herein referred to as the board. The land taken by the road commission is located in Cabell County, West Virginia, and is composed of three tracts or parcels, which contain, respectively, 2.18 acres, 3.04 acres and 2.50 acres and aggregate 7.72 acres. At the time of the institution of this proceeding the Board used the foregoing land as part of the public park facilities maintained and operated by the board and it had been acquired in part by voluntary purchase and in part by proceedings in eminent domain.

The petitioner road commission took possession of the property on March 24, 1964. Commissioners appointed by the court to ascertain just compensation made an award of

$15,000.00 as such compensation on April 12, 1966 for the land taken. The road commission filed exceptions to the report of the commissioners and both the road commission and the board demanded a trial by jury.

By pretrial order entered January 9, 1967, the court ruled that the issues to be tried were (1) what amount the defendant board is entitled to recover for the land taken and damages to the residue; (2) whether the board is required to establish, as a prerequisite to recovery in this proceeding, that the land taken by the road commission was necessarily used for the purposes of the board in the sense that it would be required to obtain substitute or equivalent property in order to carry out such purposes; and (3) what is the proper measure of damages to be applied in the taking of land by one governmental agency from another governmental agency; and the foregoing issues were set for hearing by the court on March 10, 1967.

By subsequent pretrial order entered June 8, 1967, the court ruled that before the board is entitled to any compensation for land taken, it is required to establish that the land taken was reasonably necessary for park purposes and further that such issue was a question of law to be determined by the court. The court further ruled that if the board was able to prove that the land taken was reasonably necessary for park purposes, the just compensation to be determined by a jury is the reasonable cost at the time of the taking on March 24, 1964 of replacing the land taken and of restoring the remaining property of the board to the same equal utility for the purposes for which the land taken had been used when it was taken by the road commission in this proceeding.

Certain undisputed facts were stipulated by the attorneys representing the respective parties. During the trial on February 7, 1968, the court conducted a hearing out of the presence of the jury to determine whether the land taken was reasonably necessary for park purposes and after hearing the testimony of three witnesses in behalf of the defendant board and three witnesses in behalf of the petitioner road commission, the court ruled that the land taken had been

acquired for public and necessary use by the board in the operation of its park system and that from the time of its acquisition it had been necessarily used by the board for park purposes. Upon the conclusion of the foregoing hearing the court and the parties returned to the courtroom and upon the trial before the jury G. M. Mossman, a qualified valuation witness produced in behalf of the board, testified that he had located certain land as a suitable replacement for the land taken; that the replacement land consisted of eight acres and was the only land available as a suitable replacement for the land taken; and that the reasonable cost of such replacement land was $15,000.00. The evidence of this witness was not controverted. The petitioner road commission introduced no evidence as to the cost of the replacement for the land taken.

At the conclusion of the evidence relating to the cost of the replacement land, the board moved the court to direct a verdict in its favor in the amount of $15,000.00 as just compensation for the land taken. The court sustained the motion of the board and at the direction of the court the jury returned this verdict, which was duly signed by the foreman: "By direction of the court, we the jury do agree and find that the sum of Fifteen Thousand Dollars ($15,000.00) is just compensation to be paid to the defendant landowner. for the 7.72 acres taken by the Road Commission for highway purposes."

By its final judgment rendered September 6, 1968, the court overruled the motion of the petitioners to set aside the verdict and grant a new trial and held that upon payment of the compensation awarded by the jury title to the estates in the land taken described in the judgment be vested in the petitioner, The State Road Commission of West Virginia. To that judgment this writ of error was granted by this Court upon the application of the petitioner The State Road Commission of West Virginia on June 23, 1969.

On February 10, 1970, this proceeding was heard by this Court upon the record and the brief and oral argument in behalf of the defendant Board of Park Commissioners of the City of Huntington and was submitted for decision. The petitioner,

The State Road Commission of West Virginia, filed no brief and did not appear at the hearing of this case. Though it filed no brief, it assigned numerous errors in its petition for a writ of error which, as summarized, are the action of the circuit court (1) in ruling that the land taken in this proceeding was used and was reasonably necessary for park purposes and in refusing to submit that issue as one of fact to the jury; (2) in refusing to direct a verdict for The State Road Commission of West Virginia on the ground that the evidence in behalf of the board was insufficient to establish the value and utility for park purposes of the land to replace the land taken; and (3) in directing a verdict for $15,000.00 in favor of the defendant Board of Park Commissioners of the City of Huntington, West Virginia.

The evidence in behalf of the board to show that the land taken was used for park purposes and that such use was reasonably necessary for the maintenance and operation of the park is not controverted in any material aspect and the action of the court in holding, as a matter of law, that the land taken was used and was necessary for park purposes and in refusing to submit that issue to the jury was proper and did not constitute error. Article III, Section 9, of the Constitution of this State which provides in part that private property shall not be taken or damaged for public use without just compensation, that when private property shall be taken or damaged for public use the compensation to the owner shall be ascertained in such manner as may be prescribed by general law, and that when required by either of the parties such compensation shall be ascertained by an impartial jury of twelve freeholders. The only question required by the Constitution to be determined by a jury in a proceeding in eminent domain is the question of just compensation. There is no constitutional requirement that any other question in a condemnation proceeding shall be submitted to and determined by the jury. The question whether the property taken was used and was necessary for park purposes is a mixed question of law and fact; and though the specific question here involved has not been decided in any prior decision of this Court, it has been held in other jurisdictions that questions

of fact and mixed questions of law and fact in an eminent domain proceeding, other than the question of just compensation, are questions to be determined by the court.

In 30 C.J.S., *Eminent Domain*, Section 289, the text contains these statements: "In some cases the courts have stated that the only question for the jury in condemnation proceedings is that of value or compensation, and all other questions, even though they are questions of fact or of mixed law and fact, are to be tried by the court, and without reference to a jury." In 27 AM. JUR. 2d, *Eminent Domain*, Section 408, is this language: "Generally, where a jury trial is had, the only question which the owner is entitled to have tried by the jury is the amount of his compensation or damages, and he has no constitutional right to be heard by the jury on the validity of the taking, which is a question of law for the court, or the necessity and expediency of the public improvement, which is not ordinarily a judicial question at all, except in the states in which it is otherwise specifically required. In valuing land taken in eminent domain, the jury are not entirely limited to the knowledge that they acquire from the evidence introduced. In part at least, they may rely upon their general knowledge and experience and what they observe upon a view of the premises. Of course, however, the jury is to determine the weight to be given to the evidence on questions submitted to them. In a condemnation proceeding in which the evidence is conflicting, it is within the province of the jury to resolve such conflict, but so far as such process is concerned, the result reached must be within the evidence and supported by it." In *Carnegie Natural Gas Company v. Swiger*, 72 W.Va. 557, 79 S.E. 3, 46 L.R.A., N.S., 1073, this Court held in point 7 of the syllabus that in an eminent domain proceeding "The question of the public need or benefit of such proposed right of way or easement is generally a question for the court and not one of fact for jury trial."

In *City of Oakland v. Pacific Coast Lumber and Mill Company*, 171 Cal. 392, 153 P. 705, the Supreme Court of California, considering a provision of the Constitution of that

State, which is substantially similar to the provision of the Constitution of this State, that just compensation shall be ascertained by a jury if required by either party, held that in an action of eminent domain by a city to condemn tidelands, the trial court properly ruled upon the question whether the property taken constituted a part of a larger parcel comprising a mill property. In the opinion in rejecting the contention that the question whether the property taken constituted a part of a larger parcel comprising a mill property should have been submitted to the jury for its determination, the court said: "But neither the state nor any of its mandatories nor any other person or corporation exercising the power of eminent domain, is compelled to submit to the determination of a jury every question of fact (*Vallejo, etc., v. Reed Orchard Co.*, 147 P. 238), and this question of fact (namely, whether or not, the probative facts being without controversy, the resultant fact establishes the existence of a parcel from which a portion is to be taken) is essentially a question of law for the determination of the court. It is only the 'compensation,' the 'award,' which our Constitution declares shall be found and fixed by a jury. All other questions of fact, or of mixed fact and law, are to be tried, as in many other jurisdictions they are tried, without reference to a jury." See also *People v. Ricciardi*, 23 Cal. 2d 390, 144 P.2d 799.

Whether questions of fact or mixed questions of law and fact as to which the evidence is conflicting and as to which reasonable men may reach different conclusions from undisputed evidence, other than the question of just compensation, are questions to be determined by the court or by the jury in an eminent domain proceeding need not be, and are not, determined on this writ of error for the reason that the evidence was not controverted on the question whether the land taken was used for park purposes and such use was necessary to the operation and maintenance of the park by the board. As the evidence bearing upon that question was not conflicting and was such that only one inference could be drawn by reasonable minds from the undisputed evidence, that question was clearly a question of law for the court. *Axelrod v. Premier Photo Service, Inc.*, 154 W.Va. 137, 173

S.E.2d 383; *Adkins v. Aetna Life Insurance Company*, 130 W.Va. 362, 43 S.E.2d 372; *Huminsky v. Gary National Bank*, 107 W.Va. 658, 150 S.E. 9. Point 1, syllabus, in the *Adkins* case contains this language: "When the evidence which bears upon an issue in the trial of an action is not conflicting and only one inference may be drawn by reasonable minds from undisputed facts the issue becomes a question of law for the court." See also *American Telephone and Telegraph Company v. Ohio Valley Sand Company*, 131 W.Va. 736 at page 743, 50 S.E.2d 884; *Gilkerson v. Baltimore and Ohio Railroad Company*, 129 W.Va. 649, 41 S.E.2d 188; *Cooper v. Pritchard Motor Company*, 128 W.Va. 312, 36 S.E.2d 405.

In an eminent domain proceeding questions of fact and mixed questions of law and fact, other than the question of just compensation for the land taken, are questions of law for the court when the evidence bearing upon such questions is not conflicting and only one inference can be drawn by reasonable minds from undisputed facts; but the question of just compensation to which the landowner is entitled must be submitted to, and ascertained by, a jury as provided by Article III, Section 9, of the Constitution of this State, unless trial of that question by a jury is waived by the parties to such proceeding. *State by the State Road Commission v. Boggess*, 147 W.Va. 98, 126 S.E.2d 26; *Thorne v. City of Clarksburg*, 88 W.Va. 251, 106 S.E. 644.

An eminent domain proceeding is a special proceeding and is *sui generis;* and in such proceeding the defendant is always entitled to just compensation for property taken. The condemnor concedes the right to compensation and presumably is always willing to pay a certain sum. Though it is necessary to determine the right of the condemnor to take the property in question, the primary purpose of an eminent domain proceeding is to determine the amount which the condemnor shall be required to pay the defendant as just compensation for the property taken. *United States v. City of Jacksonville, Arkansas*, 257 F.2d 330. The right or power of the State to take or damage private property for public use in an eminent domain proceeding is an inherent attribute of sovereignty and

is not dependent on constitutional or statutory provisions. *State by Department of Natural Resources v. Cooper,* 152 W.Va. 309, 162 S.E.2d 281. The right to exercise the power of eminent domain is conferred by statute, either in express terms or by necessary implication. 29A C.J.S., *Eminent Domain,* Section 22. There was no right to a jury trial in an eminent domain proceeding at common law. *Simms v. Dillon,* 119 W.Va. 284, 193 S.E. 331, 113 A.L.R. 787.

The guiding principle of just compensation is reimbursement to the owner for the property taken and he is entitled to be put in as good a position pecuniarily as if his property had not been taken. *United States v. Reynolds,* 397 U.S. 14, 90 S. Ct. 803, 25 L. Ed. 2d 12; *United States v. Virginia Electric and Power Company,* 365 U.S. 624, 81 S. Ct. 784, 5 L. Ed. 2d 838; *United States v. New River Collieries Company,* 262 U.S. 341, 43 S. Ct. 565, 67 L. Ed. 1014, *Seaboard Air Line Railway Company v. United States,* 261 U.S. 299, 43 S. Ct. 354, 67 L. Ed. 664. The rule is well established that in an eminent domain proceeding the proper measure of the value of the property taken is the owner's loss, not the taker's gain. *United States v. Causby,* 328 U.S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206; *United States ex rel. Tennessee Valley Authority v. Powelson,* 319 U.S. 266, 63 S. Ct. 1047, 87 L. Ed. 1390; *State of California v. United States,* 169 F.2d 914.

The determination of just compensation for property taken on the basis of ascertainment of fair market value, that is what a willing buyer would pay to a willing seller, both acting voluntarily and without compulsion, is not an absolute standard or an exclusive method of valuation. *State of California v. United States,* 395 F.2d 261. Where property already devoted to public use by one agency of government is condemned by another such agency for some unrelated public purpose, just compensation consists in paying the cost of providing equivalent substitutes or necessary replacements for the property taken. *City of Wichita v. Unified School District No. 259,* 201 Kan. 110, 439 P.2d 162.

The rule requiring the payment of the cost of substitute facilities is an application of the principles controlling the determination of just compensation and is not an exception

to those principles. *State of California v. United States,* 395 F.2d 261. In that case, quoting from the leading case of *United States v. Virginia Electric and Power Company,* 365 U.S. 624, 81 S. Ct. 784, 5 L. Ed. 2d 838, the court said: "The guiding principle of just compensation *is reimbursement to* the owner for the property interest taken. 'He is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but *is* not entitled to more.' *Olson v. United States,* 292 U.S. 246, 255, 54 S. Ct. 704, 78 L. Ed. 1236. In many cases this principle can readily be served by the ascertainment of fair market value—'what a willing buyer would pay in cash to a willing seller.' *United States v. Miller,* 317 U.S. 369, 374, 63 S. Ct. 276, 87 L.Ed. 336. See *United States v. Commodities Trading Corp.,* 339 U.S. 121, 123, 70 S. Ct. 547, 94 L. Ed. 707; *United States v. Cors,* 337 U.S. 325, 333, 69 S. Ct. 1086, 93 L. Ed. 1392. But this is not an absolute standard nor an exclusive method of valuation. See *United States v. Commodities Trading Corp.,* supra, 339 U.S. at 123, 70 S. Ct. at page 549; *United States v. Cors,* supra, 337 U.S. at 332, 69 S. Ct. at page 1090; *United States v. Miller,* supra, 317 U.S. at 374-375, 63 S. Ct. at page 280, *United States v. Toronto, Hamilton & Buffalo Nav. Co.,* 338 U.S. 396, 70 S. Ct. 217, 94 L. Ed. 195."

In *United States v. Certain Property Located in the Borough of Manhattan,* 403 F.2d 800, the United States Court of Appeals, Second Circuit, said: "The 'substitute facilities' doctrine is not an exception carved out of the market value test; it is an alternative method available in public condemnation proceedings. *United States v. City of New York,* 168 F.2d 387, 390 (2 Cir. 1948); *State of California v. United States,* 395 F.2d 261, 266 (9 Cir. 1968). When circumstances warrant, it is another arrow to the trier's bow when confronted by the issue of just compensation." The opinion in that case also contains these statements: "When the public condemnee proves there is a duty to replace a condemned facility, it is entitled to the cost of constructing a functionally equivalent substitute, whether that cost be more or less than the market value of the facility taken. *City of Fort Worth v. United*

*States,* supra, 188 F.2d at 223; *Town of Clarksville v. United States,* supra, 198 F.2d at 243."

In *United States v. The Board of Education of Mineral County,* 253 F.2d 760, the United States Court of Appeals of the Fourth Circuit, the opinion by Parker, Chief Judge, said: "Ordinarily, of course, market value is the measure of compensation in condemnation cases; and the difference in market value of the residue before and after taking is ordinarily a fair measure of severance damages. As said in *United States v. Cors,* 337 U.S. 325, 332, 69 S. Ct. 1086, 1090, 93 L. Ed. 1392, however, we are not to make a fetish of market value 'since it may not be the best measure of value in some cases.' Where the highest and best use of the property is for municipal or governmental purposes, as to which no market value properly exists, some other method of arriving at just compensation must be adopted, and the cost of providing property in substitution for the property taken may reasonably be the basis of the award."

In *Town of Clarksville v. United States,* 198 F.2d 238, 242, *certiorari denied,* 334 U.S. 927, 73 S. Ct. 495, 97 L. Ed. 714, the same court, speaking by Judge Dobie, used this language: "The general principles applicable to an eminent domain taking of municipal facilities are well established. The taking may be justly compensated by payment of the cost of a substitute, so long as a full equivalent is afforded for the property taken. See *Brown v. United States,* 263 U.S. 78, 44 S. Ct. 92, 68 L. Ed. 171; *United States v. Arkansas,* 8 Cir., 164 F.2d 943; *Mayor and City Council of Baltimore v. United States,* 4 Cir., 147 F.2d 786, 790; *United States v. Wheeler Township,* 8 Cir., 66 F.2d 977; *Town of Bedford v. United States,* 1 Cir., 23 F.2d 453, 56 A.L.R. 360." In *United States v. Des Moines County,* 148 F.2d 448, 160 A.L.R. 953, *certiorari denied,* 326 U.S. 743, 66 S. Ct. 56, 90 L. Ed. 444, Circuit Court of Appeals, Eighth Circuit, headnote 1 to the case contains this language: "The proper measure of compensation for a taking by the United States of public roads within an area condemned for military purposes is not their actual value, but the cost of providing such substitute roads as may be necessary; and recovery is not limited to

nominal damages by the fact that the public authorities are under no legally enforceable duty to provide substitute roads."

When property already devoted to a public use is condemned for or subjected to some other public use and it can no longer be devoted to its original purpose by its owner, compensation consists of the value of the property so taken or the cost of a substitute. Accordingly, the taking in eminent domain of public facilities may be justly compensated by payment of the cost of a substitute, so long as a full equivalent is afforded for the property taken. 29A C.J.S., *Eminent Domain*, Section 146. This Court has recognized the cost of a substitute facility as the proper measure of compensation for property devoted to public use which has been taken in an eminent domain proceeding in a case in which that measure of compensation may be properly applied. See *The State Road Commission of West Virginia v. Penndel Company*, 147 W.Va. 505, 129 S.E.2d 133. Under the undisputed evidence the Board of Park Commissioners is required to acquire a substitute facility or land replacement for the land taken in order to operate and maintain the park as it was operated and maintained before the road commission took the 7.72 acres which were necessarily used by the board for park purposes.

Application of the foregoing principles justifies the cost of the substitute or replacement land to be obtained by the Board for use for park purposes in the place of the 7.72 acres of park land taken by the road commission as just compensation to which the board was entitled for the land taken. The action of the trial court in rendering judgment for the amount of such cost was correct. The property taken had no market value when used for park purposes and there is no showing that it possessed any market value if used for any other purpose.

Ordinarily, fair market value of the land taken in an eminent domain proceeding is the basis for the ascertainment of just compensation to its owner; but when the land of a governmental agency already devoted to public use by such agency

is taken by another governmental agency for public use unrelated to its former use and the land so taken, as previously used, has no market value, the cost of providing an equivalent substitute or necessary replacement which will place the landowner in the same position he would have been in if his land had not been taken becomes the basis for the ascertainment of just compensation to which such landowner is entitled. *City of Wichita v. Unified School District No. 259,* 201 Kan. 110, 439 P.2d 162; *State of California v. United States,* 395 F.2d 261; *United States v. The Board of Education of Mineral County,* 253 F.2d 760; *Town of Clarksville v. United States,* 198 F.2d 238, *certiorari denied,* 344 U.S. 927, 73 S. Ct. 495, 97 L. Ed. 714.

The contention of the petitioner road commission that the court erred in directing the jury to return a verdict in favor of the defendant for $15,000.00 is devoid of merit. The verdict, though directed by the court, was a jury verdict and the ascertainment of just compensation for such verdict was not violative of, but was in compliance with, the constitutional requirement that compensation for private property taken or damaged for public use be ascertained by an impartial jury of twelve freeholders. Though it would have been more satisfactory for the court to have submitted the question of the amount of just compensation to the jury without direction, the only proper verdict for such compensation which the jury could have rendered, under the undisputed evidence of the cost of the replacement land, was a verdict in the amount of $15,000.00. The action of the court in directing such verdict, instead of permitting the jury without direction to have returned the verdict in that amount, did not affect the validity of the verdict but satisfied the constitutional requirement of ascertainment of just compensation by the verdict of a jury. In 30 C.J.S., *Eminent Domain,* Section 289, the text is: "The case or issue may and should be submitted to the jury where the evidence is conflicting, and a directed verdict is improper, but if the evidence is free from conflict or there is no evidence legally sufficient to support the material issues they should be withdrawn from the jury, and the trial judge may properly

direct a verdict for the condemnee in the amount shown by the evidence."

When in an eminent domain proceeding a specific amount is established by the undisputed evidence as the compensation to which the landowner is entitled for the land taken, and no other amount is disclosed by or included in the evidence, the trial court may properly direct the jury to render a verdict in favor of the landowner for the sole amount so shown by the evidence.

The judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*