IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

**FILED**

**November 19, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0517

WEST VIRGINIA DEPARTMENT OF
TRANSPORTATION, DIVISION OF HIGHWAYS,
Petitioner Below, Petitioner,

v.

LAWRENCE W. PIFER and MICHAEL E. PIFER,
Respondents Below, Respondents.

Appeal from the Circuit Court of Wood County
The Honorable Jason Wharton, Judge
Civil Action No. 10-C-95

AFFIRMED, IN PART, REVERSED, IN PART,
AND REMANDED

Submitted:  October 30, 2019
Filed:  November 19, 2019

Webster J. Arceneaux, III, Esq.
James C. Stebbins, Esq.
Joseph L. Jenkins, Esq.
Lewis Glasser PLLC
Charleston, West Virginia

Robert L. Bays, Esq.
Bowles Rice LLP
Parkersburg, West Virginia
and

Counsel for Petitioner                                   William Crichton, V
                                                         William Crichton, VI
                                                         Crichton & Crichton
                                                         Parkersburg, West Virginia
                                                         Counsel for Respondents


JUSTICE WORKMAN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "'The ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, in part, *Sanders v. Georgia–Pacific Corp.,* 159 W. Va. 621, 225 S.E.2d 218 (1976)." Syl. Pt. 2, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.,* 223 W. Va. 209, 672 S.E.2d 345 (2008).

2.      "The measure of just compensation to be awarded to one whose interest in real estate is taken for a public use in a condemnation proceeding is the fair market value of the property at the time of the taking." Syl. Pt. 1, *W.Va. Dep't of Transp., Div. of Highways v. W. Pocahontas Props., L.P.*, 236 W. Va. 50, 777 S.E.2d 619 (2015).

3.      "The approved and general rule for the measure of damages in an eminent domain proceeding where parts of the land are taken is the fair market value for the land at the time it was taken, plus the difference in the fair market value of the residue immediately before and immediately after the taking less all benefits which may accrue to the residue from the construction of the improvement for which the land was taken." Syl. Pt. 3, *W.Va. Dep't of Highways v. Bartlett*, 156 W. Va. 431, 194 S.E.2d 383 (1973).

4.      "There must be proof which furnishes reasonable certainty of damages in eminent domain proceedings, and damages which are remote, conjectural or

i

speculative cannot be recovered in such proceedings." Syl. Pt. 4, *W.Va. Dep't of Highways v. Bartlett*, 156 W. Va. 431, 194 S.E.2d 383 (1973).

5.    A landowner may seek damages for condemnation blight as an element of just compensation in a condemnation proceeding. W.Va. Const. art. III, § 9; W.Va. Code § 54-2-9a (2016).

6.    Because some delays relating to public projects are natural and unavoidable, before a landowner may recover damages for condemnation blight, he or she must establish that there has been an unreasonable delay in instituting the condemnation proceeding following its official announcement. Mere planning of the public project is insufficient to trigger a claim for damages. Additionally, a landowner must prove his or her damages were caused by the condemning authority's actions or inactions.

**Workman, Justice:**

In this appeal, we are asked to review a trial court's ruling that Respondents Lawrence W. Pifer and Michael E. Pifer were entitled to damages related to condemnation blight[1] for several years preceding the filing of the condemnation petition and the manner in which the court calculated interest on the award. Respondents are brothers who own property in Wood County, West Virginia, and operate a family business on their property. The fair market value of their land with improvements is $2.5 million.

In 1998, Petitioner West Virginia Department of Transportation Division of Highways ("DOH") announced plans regarding a public improvement project that would severely impact Respondents' property. More than a decade later, however, DOH changed the project plans and condemned only a small portion of Respondents' property. Although relieved that their businesses were spared, Respondents introduced evidence at trial that DOH's protracted delay in commencing the project caused them to suffer condemnation blight for years prior to DOH filing the condemnation petition. The jury awarded a nominal sum for the "taking" of the property and $175,165 in damages for condemnation blight. In its judgment order, the trial court calculated interest thereby increasing the total verdict to $466,114.

---

[1] "Condemnation blight" is "[t]he reduction in value that the property targeted for condemnation suffers in anticipation of the taking." *Condemnation Blight,* Black's Law Dictionary (10th ed. 2014).

DOH argues that the Circuit Court of Wood County's order denying its motion for a new trial and to amend or alter the judgment is a marked departure from well-established rules for determining just compensation due a landowner in a condemnation proceeding. Specifically, DOH argues the trial court erred: (1) by holding the date of take was an issue of fact for the jury; (2) by failing to incorporate condemnation blight within the context of its impact upon the fair market value of the property as of the date of the take, and improperly instructing the jury on the issue; and (3) by calculating interest in its judgment contrary to statute.[2]

As set forth below, we affirm the trial court's judgment on the jury's award of damages for condemnation blight. However, we reverse and remand with directions for the trial court to recalculate interest on the award in accordance with West Virginia Code § 54-2-14a.

## I. FACTUAL AND PROCEDURAL HISTORY

Respondents are independent operators of a gasoline service station, convenience store, and towing service in Mineral Wells, West Virginia. Respondents have operated their family business for more than twenty years on their 2.45 acre parcel that fronts County Route 14.

---

[2] *See* W.Va. Code § 54-2-14a (2016).

2

In April, 1996, and October, 1998, DOH held public informational meetings regarding a planned public project involving the South Mineral Wells Interchange of Interstate 77 and County Route 14 (the "project"). DOH considered several plans for completion of the project. Under the plan chosen in December, 1998, Alternate Plan C, DOH would take Respondents' parcel of land almost in its entirety. Respondent Michael E. Pifer testified that DOH's announcement was devastating news to him and his family.[3]

> That was shortly after we went to that meeting over at the Mineral Wells school, and had the bomb set on us that we were the cheapest and it looked like they was going to take us. And that was in '98. That was my anniversary message to my wife that night.

By letter dated December 18, 1998, DOH confirmed that it chose Alternate Plan C for the portion of the project west of the interstate. Mr. Pifer testified about the significance of DOH's selection: "That's going through my convenience store. That's going through my gas pumps, and that's going through my tank field."

By letter dated March 21, 2001, DOH informed Respondents that construction plan development would begin in July, 2003, and construction would begin in "Spring 2005." DOH kept in touch with Respondents, however, and delayed moving forward on the project; construction did not begin as planned.

---

[3] Respondent Lawrence W. Pifer did not testify.

In April, 2008, a DOH employee met with Michael E. Pifer at his service station to announce DOH changed the project plans, preliminarily, and Respondents' property would largely be spared. Mr. Pifer testified,

> this was one of the happiest days that I had, because this showed that we wasn't being taken. The convenience store was not being taken. The gas pumps was not being taken. The tank field was not being taken. And this paper . . . shows that they're going to take one leg of my big sign out there. And then the temporary construction easement across almost all the way, and then that one in that right-of-way. And then they were going to take that five-foot by the sign where it had the two stakes out there. . . . But it pretty well told me we were going to survive.

Subsequent to this modification, DOH again changed the project plan to avoiding taking Respondents' sign. Ultimately, DOH sought to condemn a 116-square-foot piece of land for a noncontrolled access right of way, a 424-square-foot area for a temporary construction easement ("TCE"), and a second 53-square-foot area for another TCE (the "condemned property").

On March 9, 2010, DOH filed its petition to condemn Respondents' land for a public use and, per West Virginia Code § 54-2-14a, deposited $3,550 with the trial court, which DOH estimated to be just compensation. As the condemned property represented only a small portion of what Respondents owned, it was considered a partial taking. Commissioners appointed to ascertain "just compensation" determined that Respondents should be awarded $17,500. Both parties objected to the commissioners' report and the matter went to jury trial. *See id*. § 54-2-10 (providing either party may

"demand that the question of the compensation, and any damages to be paid, be ascertained by a jury, in which case a jury of twelve freeholders shall be selected and impaneled").

In addition to seeking the usual compensation associated with a taking, Respondents sought damages for DOH's allegedly unreasonable actions during the pre-condemnation period based on the length of time between the 1998 public announcement and the filing of the petition in 2010. Respondents claimed that they suffered damages for rental loss due to condemnation blight. Prior to trial, DOH moved in limine to preclude the introduction of evidence or testimony of condemnation blight, asserting that Respondents' method for calculating those damages had not been recognized in West Virginia. DOH further moved the trial court to preclude introduction of evidence that the date of take should be earlier than the date the petition was filed. By letter to the parties, the trial court denied DOH's motion.

The five-day trial in this matter commenced on August 8, 2017, and the jury viewed Respondents' property after the parties' opening remarks. Respondent's expert appraiser, Russell Rice, testified at length regarding his investigation to determine the public project's impact to Respondents' property. His evaluation began with the usual two-step process: (1) he determined the fair market value of the property taken as $2,000; and (2) he determined the damage to the residue was zero. Mr. Rice explained that the threat of condemnation did not affect the value of the residue at all, but the

primary influence of the condemnation blight was the loss of Respondents' ability to negotiate a lease on the property with a major distributor from 2001 to 2010. Mr. Rice opined that Respondents suffered $35,000 in damages each year based on reasonable market rental values.

Michael E. Pifer testified that the best use of his property at the time was to lease to a major dealer/distributor of gasoline rather than to compete with one. The announcement of the project put Respondents' property under threat of condemnation and they were unable to go forward with negotiations for a favorable lease with a larger commercial operation. Mr. Pifer stated that he was one of the last independents at any major intersection off Interstate 77 in Wood County and he simply could not compete with the larger distributors. When asked if he made any efforts following 2000 to lease the gasoline service station, Mr. Pifer explained: "Well, I didn't have to make efforts, they come to us. But every one of them said 'When the road's done. When the Road's done we want to talk to you. When the road's done we will be interested in leasing your facility.'" Mr. Pifer stated further that "no one wanted to lease off of us if the place was going to be torn up and the road construction was going to be three years long. I mean, it really hurts your business when they're doing stuff out there." Mr. Pifer claimed $812,000 in damages attributable to condemnation blight.

DOH's expert arraiser, Roscoe Shiplett, testified that he did not see any evidence of condemnation blight when valuing Respondents' property. He noted Respondents continued to operate their business during all relevant times.

The trial court instructed the jury as follows:

> When a condemnor unreasonably delays between the announcement of an intent to condemn a parcel of property and the initiation of the condemnation action causing an owner to suffer damages, the owner is entitled to compensation for that loss. Where the real property has been blighted because of the delay between the announcement of a public project and the acquisition of the lands necessary to construct the project the owner is entitled to recover any decrease in value attributable either to the project, to the pendency of the condemnation project proceedings or to the conduct of the agency relating to the taking of the property and to any loss of earnings from the subject property during the period of the blight.
>
> Accordingly if you find by a preponderance of the evidence that the subject property has suffered blight by virtue of a delay between the announcement of the subject project and the acquisition and the date of this condemnation, then you may award damages for any loss of earnings (both personally and business) and any diminution of market value, proven by a preponderance of the evidence.

Following deliberations, the jury awarded Respondents $2,000 for the take and $1,800 for the TCEs. The jury further found that Respondents suffered damages related to condemnation blight prior to March 9, 2010, and awarded $35,033 for five years (2003 – 2007) for a total of $175,165. The trial court entered its judgment order on November 16, 2017, and calculated pre-petition interest at 10% and then 10% interest

7

was calculated to the total award from the date of petition to arrive at the $466,114 verdict.

DOH moved for a new trial and to alter or amend the judgment and asserted that the evidence presented regarding condemnation blight was in contravention of the law as was the admission of evidence regarding the date of take. DOH further argued that the trial court improperly calculated interest in its judgment order. By order entered May 11, 2018, the trial court denied the motion and this appeal followed.

## II.  STANDARD OF REVIEW

When reviewing a circuit court's decision on a motion for a new trial, we have held that,

> "[t]he ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, in part, *Sanders v. Georgia-Pacific Corp.,* 159 W. Va. 621, 225 S.E.2d 218 (1976).

Syl. Pt. 2, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.,* 223 W. Va. 209, 672 S.E.2d 345 (2008).

## III.  DISCUSSION

The United States Constitution states that no private property shall "be taken for public use, without just compensation." U.S. Const. amend. V. "The Fifth

Amendment's guarantee that private property shall not be taken for public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. U.S.*, 364 U.S. 40, 49 (1960).

Some states simply incorporate into their constitutions the Fifth Amendment's prohibition on private property being taken for public use without just compensation. 8A *Nichols on Eminent Domain* § G18.06[2][c]–14F.03 at G18-41 (3rd ed. 2015) (hereinafter "*Nichols*"). Twenty-five states, including West Virginia, have constitutional provisions that expand the scope of the constitutional protection to both the taking and damaging private property. *Id.*[4] Article III, section 9 of the West Virginia Constitution provides, in part, that "[p]rivate property shall not be taken *or damaged* for public use, without compensation." (Emphasis added). This constitutional expansion is central to our analysis of Respondents' claim for damages.

---

[4] *See also* John Martinez, *Government Takings* § 12:25. State Constitutional Alternatives (Oct. 2019 update) ("All states now have some form of just compensation provision. 48 states and the District of Columbia have enacted constitutional just compensation provisions. Kansas has adopted the just compensation principle by statute and North Carolina's supreme court has interpreted a related provision in the state's constitution as embodying the just compensation principle. Of the 48 states with constitutional provisions, 16 states and the District of Columbia prohibit 'takings' of private property, mirroring the federal Just Compensation Clause, 25 states prohibit takings and also protect private property from being 'damaged' without compensation. Seven states prohibit takings and also prohibit private property from being 'applied to public use'.") (footnotes omitted).

It is easier to be compensated for condemnation blight in states whose constitutions provide for just compensation for both taking and damaging private property for public use. If the state is a "taking-damaging" state, then the condemnee's chances of receiving compensation for condemnation blight are quite good. On the other hand, however, if the state is a "taking" only state, the fact that a de facto taking has occurred must first be established to show that the landowner is due just compensation for the condemnation blight. Therefore, if a finding is made that a de facto taking has not occurred, compensation will not be awarded and the property owner will be deprived of the financial loss resulting from condemnation blight.

*Nichols, supra* § G18.06[2][d] at G18-41.

In the statutes that govern condemnation proceedings, West Virginia Code §§ 54-1-1 to 54-2-21 (2016),[5] our Legislature distinguished between just compensation for the take and related damages. With regard to the take, West Virginia Code § 54-2-9 provides that the commissioners shall ascertain what will be just compensation to the person for the property proposed to be taken and for damage to the residue in a partial taking. This Court has held, "[t]he measure of just compensation to be awarded to one whose interest in real estate is taken for a public use in a condemnation proceeding is the fair market value of the property at the time of the taking." Syl. Pt. 1, *W.Va. Dep't of*

---

[5] "'Eminent domain' is the legal term for the inherent power of a government entity to take private property for public use. 'Condemnation' is the legal proceeding filed by a government entity in the exercise of its eminent domain power to take private property for public use." *W.Va. Dep't of Transp., Div. of Highways v. Western Pocahontas Properties, L.P.*, 236 W. Va. 50, 58 n.1, 777 S.E.2d 619, 627 n.1 (2015), cert. denied sub nom. *Beacon Res., Inc. v. W.Va. Dep't of Transp., Div. of Highways*, 136 S.Ct. 1453 (2016) (citations omitted).

*Transp., Div. of Highways v. W. Pocahontas Props., L.P.* ("*WPP*"), 236 W. Va. 50, 777

S.E.2d 619 (2015). Comparably, in the event of a partial taking, this Court has held:

> The approved and general rule for the measure of damages in an eminent domain proceeding where parts of the land are taken is the fair market value for the land at the time it was taken, plus the difference in the fair market value of the residue immediately before and immediately after the taking less all benefits which may accrue to the residue from the construction of the improvement for which the land was taken.

Syl. Pt. 3, *W.Va. Dep't of Highways v. Bartlett*, 156 W. Va. 431, 194 S.E.2d 383 (1973).

With regard to damages, West Virginia Code § 54-2-9a provides:

> If the report of the commissioners includes *any sum for damages, in addition to the sum for just compensation for the property*, or interest or right therein, proposed to be taken, the commissioners shall, if the owner or owners of the property request the same, state in their report what sum has been fixed as damages.

(Emphasis added). This Court has held, "[t]here must be proof which furnishes

reasonable certainty of damages in eminent domain proceedings, and damages which are

remote, conjectural or speculative cannot be recovered in such proceedings." Syl. Pt. 4,

*Bartlett*, 156 W. Va. at 432, 194 S.E.2d at 384.

In the event a party requests a jury trial, the jury determines just

compensation owed the landowner by considering the same elements—the taking and

damaging. *See* W.Va. Code 54-2-10 ("[t]he jury, ascertaining the damages or

11

compensation to which the owner of the property . . . proposed to be taken is entitled, shall be governed by sections nine [§ 54-2-9] and nine-a [§ 54-2-9a] of this article[.]"); *see also State Rd. Comm'n v. Bd. of Park Comm'rs of City of Huntington*, 154 W. Va. 159, 163, 173 S.E.2d 919, 923 (1970) ("only question required by the Constitution to be determined by a jury in a proceeding in eminent domain is the question of just compensation."). The jury has "the duty to determine the single issue of just compensation, though just compensation in an eminent domain case involves different elements." *State Rd. Comm'n v. Darrah*, 151 W. Va. 509, 514, 153 S.E.2d 408, 412 (1967) (citing 1931 version of W.Va. Code §§ 54-2-9 and 9a)).

With this background to guide us, we turn to the issues raised by DOH.

## A. Date of Take

DOH contends the trial court wrongly held that the date of take was an issue of fact for the jury to decide. DOH asserts the trial court should have declared the date of take, as a matter of law, as the date the condemnation petition was filed. *See* Syl. Pt. 1, *W.Va. Dep't of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986) ("In eminent domain proceedings, the date of take for the purpose of determining the fair market value of property for the fixing of compensation to be made to the condemnee is the date on which the property is lawfully taken by the commencement of appropriate legal proceedings pursuant to *W.Va. Code,* 54-2-14a, as amended."). DOH maintains

there was nothing for the jury to decide because the date of take was conclusively determined to be March 9, 2010.

We agree with DOH that under the facts presented here, "the date of take for the purpose of determining the fair market value of property . . . lawfully taken" was March 9, 2010. *Roda*, 177 W. Va. at 384, 352 S.E.2d at 135, syl. pt. 1. Nevertheless, we find no support in the record for DOH's assertion that the trial court instructed the jury to decide the date of the take. In fact, this determination was simply not a point of contention between the parties by the time the case went to trial because DOH took so little of the property (116 square feet of Respondents' 2.45 acres). The jury awarded $2,000 for the take and $1,800 for the TCE (424 square feet) when the entire property, plus improvements was worth $2.5 million.

Significantly, Respondents did not argue at trial that a de facto taking occurred years earlier.[6] Rather, Respondents argued they were entitled to condemnation

---

[6] Respondents did advance a de facto taking argument earlier in the litigation. In August 2016, Respondents moved the trial court to take judicial notice of the take as January 1, 2003. This request was based on the jury verdict in *DOH v. Rapp, et al.*, Civil Action No. 10-C-109, Circuit Court of Wood County (Oct. 28, 2014). The *Rapp* case involved the same condemnation project. Mr. Rapp also operated a gasoline service station and the Rapps and Pifers owned neighboring adjacent properties. Significantly, in *Rapp*, the jury concluded that a de facto taking of the property occurred years prior to the filing of the petition. In *Rapp*, the jury awarded $1,010,573 as just compensation; the elements included fair market value of the entirety of the property ($950,000), businesses loss damages for years 2003 through 2010 ($35,573), and annoyance and inconvenience damages ($25,000).
(continued . . .)

13

blight damages prior to the take. *See* W.Va. Code § 54-2-9a (providing damages element of just compensation); *see also Nichols, supra* § G18.06[3] at G18-47 (recognizing landowner "may seek an earlier date of valuation in which to arrive at just compensation, or attempt to recover for loss of value of his or her property as an element of damages caused by the cloud of blight hovering over the property.").

We emphasize that the phrases "condemnation blight damages" and "de facto taking" are not interchangeable. The distinction between the two approaches is not merely theoretical; a de facto taking may entitle the owner to establish an earlier date for purposes of property valuation and recovery of interest. S. Cary Gaylord, Lorena Hart Ludovici, *Condemnation Blight*, ALI-ABA 189, 195 (May 7, 1992). In a case involving substantial sums of money, such a consideration becomes significant. In *Pearsall v. Richmond Redevelopment & Housing Authority*, 242 S.E.2d 228, 230 (Va. 1978), the Supreme Court of Virginia[7] discussed the practical effects of claiming damages for

---

At the hearing on Respondents' motion for the trial court to take judicial notice of the date as January 1, 2003, Respondents argued that the Rapps and the Pifers were in the same position for a number of years because DOH had publically announced its public project plans but delayed for years before filing the petitions. DOH disagreed and distinguished the cases. DOH argued the take that actually occurred to Respondents' property was "miniscule compared to the Rapps." The trial court denied Respondents' motion and found the date of take was a question of fact because each piece of property was unique. After this ruling, Respondents abandoned their de facto taking argument.

[7] Virginia is a "taking-damaging" state. Va. Const. art. I, § 11 ("No private property shall be damaged or taken for public use without just compensation to the owner thereof.").

14

condemnation blight: "The date of taking is left unchanged but the condemnee is compensated for the loss in value traceable to grossly premature disclosure of the condemnation (or other serious value-depressing actions of the condemnor), prior to the actual taking of the property." *Id.* at 230 (quotations and citations omitted).

While the verdict form did not specifically state that March 9, 2010, was the date of take, the trial court did ask the jury if Respondents "suffered condemnation blight prior to March 9, 2010?" The jury answered this question in the affirmative and then listed $35,033 in condemnation blight damages for five years (2003 – 2007) for a total of $175,165. Condemnation blight damages, by their very definition, are damages suffered in anticipation of the take.[8]

We therefore find no merit to DOH's argument. The date of take was not in dispute nor was that question left to the jury. March 9, 2010, was the appropriate date for determining the fair market value of the property taken and damage to the residue. DOH does not dispute those elements of just compensation. In this case, the date of take was significant only insofar as determining when interest began to accrue on the award.

**B. Condemnation Blight Damages**

_____

[8] *See* note 1, *supra*.

15

We now turn to the heart of DOH's criticism of the jury verdict below, which was the trial court allowing the jury to consider pre-take condemnation blight damages as an element of just compensation. "The damages suffered when a 'cloud of condemnation' hangs over a property and an actual taking is never effectuated or is long-delayed have been labeled as 'condemnation blight.'" Dale A. Whitman, *Eminent Domain Reform In Missouri: A Legislative Memoir,* 71 Mo. L.Rev. 721, 757 (2006). Condemnation blight can be marked by departure of rental tenants, unmarketability, and declines in rentability, capital values, and profits. *Id.*

This Court has addressed the topic of condemnation blight in two cases and only insofar as it related to the market value of the land taken and its effect on the residue. *See* W.Va. Code § 54-2-9. In *Huntington Urban Renewal Authority v. Commercial Adjunct Co.*, ("*HURA*") 161 W. Va. 360, 242 S.E.2d 562 (1978), the condemnor acquired large tracts of land throughout the Huntington downtown area which resulted in the displacement of businesses. The landowner's property at issue—a parking lot—was located in the project area. While HURA's plans to acquire the parking lot were pending, it proceeded to acquire large tracts of land throughout the area. This activity caused the landowner to suffer condemnation blight.[9]

---

[9] Although we did not label it as such, this Court described condemnation blight as follows:

(continued . . .)

In *HURA*, the landowner's parking lot revenues became a crucial issue because of their link with fair market value calculations for the property taken. When arriving at just compensation due the landowner, this Court chose to make adjustments to the property valuation date to account for HURA's pre-condemnation actions that depressed the fair market value of the property. *See* Syl. *HURA*, 161 W. Va. at 360, 242 S.E.2d at 563 ("Any decrease, not of a general character, in the fair market value of real property prior to the date of valuation, caused by the public improvement for which such property is acquired, or by the likelihood that the property will be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, *should be disregarded in any determination of the just compensation to be*

Commercial buildings stood on some of this land, and many were either demolished or allowed to stand vacant until they could be converted to a different use. This displacement of businesses from the project area reduced parking demand and caused parking lot revenues to decline, according to the testimony of [landowner's] expert witnesses. Also, some of the land acquired by [HURA] was developed into parking lots or parking garages which competed with [landowner's] lot. The adverse effect of this competition on [landowner's] parking lot revenues was particularly pronounced because of the reduced demand for parking in the project area. [Landowner] was effectively squeezed on two sides by [HURA], which first reduced the parking demand and then entered into competition for the few remaining parking customers. It is clear that [HURA's] actions were especially detrimental to [landowner] in this instance and went far beyond the ordinary disruptions that businesses and citizens have come to accept from public works improvement projects.

161 W. Va. at 360, 242 S.E.2d at 563.

*awarded the property owner for the property*.") (emphasis added). Thus, *HURA* stands for the proposition that it would be manifestly unjust to permit a public authority to depreciate property values through pre-condemnation activities and then take advantage of such depreciation by actually taking the property at a lower price.

In *Gomez v. Kanawha County Commission*, 237 W. Va. 451, 787 S.E.2d 9042 (2016), the landowner argued that the public project increased the property's value. This Court mentioned condemnation blight in the context of the project influence rule,[10] and found where condemnation proceedings tend to increase the value of property, the property owner is not entitled to the increased value. *Id*. at 455, 787 S.E.2d at 908. We stressed "that the project influence rule is implicated in condemnation actions *for property that is taken*." *Id*. at 466, 787 S.E.2d at 919. In situations where "only a portion of the property is taken, leaving the landowner in possession of a 'residue,' then any increase or decrease in the fair market value of the residue caused by the public improvement may be considered by the jury." *Id*. at 466, 787 S.E.2d at 919.

DOH argues the trial court erred by allowing the jury to consider condemnation blight outside the framework established by this Court in *HURA* and *Gomez*. DOH notes the parties do not dispute the value of the property actually taken and

---

[10] *See Gomez*, 237 W. Va. at 455, 787 S.E.2d at 908, syl. pt. 4 ("Under the project influence rule, any increase or decrease in value to the condemned land that is directly attributable to the project for which the land is taken must be disregarded in determining the market value of the land.").

18

states "the issue of condemnation blight that specifically arose in this matter is in the context of determining damages to Respondents' residue." On this issue, DOH contends Respondents failed to show that condemnation blight was specific to them rather than general in nature, and their evidence of loss of rental income was improper because lost profits of a business have never been recognized as an element of damages in a condemnation proceeding.

DOH's argument is fundamentally flawed. *HURA* and *Gomez* offer little guidance as to the issue before us because those cases addressed condemnation blight within the context of the West Virginia Code § 54-2-9 take. That issue is not before us. Just compensation for the take was negligible, and there was no damage to the residue following the take because Respondents' property was largely unaffected by the time the condemnation proceeding was filed. If we were to follow DOH's direction and attempt to force Respondents' damages into a West Virginia Code § 54-2-9 taking analysis, they would vanish. Respondents would be deprived of just compensation and obliged to absorb economic losses caused by DOH's protracted delay in implementing the public project alone. Thus, we decline DOH's invitation to apply an overly restrictive market value concept of compensation based on the facts presented.

Instead, the issue here is whether West Virginia landowners can recover damages related to condemnation blight as an element of just compensation. W.Va. Const. art. III, § 9; W.Va. Code § 54-2-9a. This is an issue of first impression. The only

West Virginia case cited by the parties that mentions a landowner's claim for consequential damages in a condemnation proceeding is *WPP*. In that case, we explicitly declined to address the issue:

> The parties in this case have not asked us to alter our long-standing rule and thereby hold that lost profits, loss of goodwill, going concern value, or other consequential damages to a business caused by the exercise of eminent domain are elements of just compensation. We note, however, that several state legislatures have required the inclusion of those damages in awards of just compensation.

236 W. Va. at 72, 777 S.E.2d at 641 (footnote omitted).[11]

We find ample justification for allowing a landowner to recover damages related to condemnation blight under appropriate circumstances. First, our Constitution

---

[11] The distinction between *WPP* and this case is significant. In *WPP*, we addressed the issue of *future* loss of business profits when evaluating their effect on the fair market value of the property. The elements of just compensation in that case included the amount of property taken and damage to the residue that included coal reserves beneath it. The landowner valued his property using only the future lost profits of his coalmine business. This Court made clear that the future lost profits of a business on property taken by condemnation are not recoverable under West Virginia Code § 54-2-9, but are relevant to determining its fair market value. In syllabus point two of *WPP*, we held:

> In a condemnation action, the amount of raw profit lost from a business operated either on the condemned real estate or on its residue may not be the sole basis to establish just compensation. Stated another way, business profits lost as a result of a condemnation action may not be recovered as an independent element of damages.

236 W. Va. at 50, 777 S.E.2d at 626. This point of law remains valid considering the facts of *WPP*. This Court has repeatedly stated that a syllabus point is to be read in light of the opinion. *Farley v. Worley*, 215 W. Va. 412, 426, 599 S.E.2d 835, 849 (2004).

20

and statutes require just compensation when private property is taken or damaged for public use. W.Va. Const. art. III, § 9; W.Va. Code § 54-2-9a. Second, because property refers to the rights of the landowner, the compensation granted to him or her should take into account appropriate personal losses. As Justice Holmes recognized, constitutions deal "with persons, not with tracts of land." *Boston Chamber of Commerce v. Boston*, 217 U.S. 189, 195 (1910). Third, the burden of public projects is best borne by the public, instead of the landowner. The general theory behind the requirements of just compensation is that the individual property owner should be placed in as good a position financially as he or she would have been but for the establishment of the public project. *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n*, 880 A.2d 307, 313 (Md. Ct. App. 2005).

The rationale for compensating a landowner not only for the taking of his or her property for public use, but for the financial loss suffered as a consequence of pre-condemnation activities, is clear based on the facts before us. When property owners who operate a small business suffer financial loss for several years as a result of the government's pre-condemnation activities, "then the law should be used to establish a means of recovery, not as a tool to avoid shared responsibility." *Nichols, supra* at § G18.07[1]. It "has long been recognized," that property rights are "basic civil rights," and that a government's failure to protect private property rights puts every other civil right in doubt. *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972).

Other state courts that have allowed damages for condemnation blight specifically focus on the personal losses of the landowner instead of the market value of the property taken and damage to the residue. In *Luber v. Milwaukee County*, 177 N.W.2d 380 (Wis. 1970), the Wisconsin Supreme Court found that loss in rental damages was recoverable in a condemnation proceeding.[12] In *Luber*, the state acquired the landowner's commercial property in 1967; however, the landowner had suffered loss in rental income since 1964. *Id.* at 381. *Luber* touched on the precise dilemma Respondents faced here: "[t]he inadequacy of merely awarding the fair market value of the property actually taken is most apparent in cases of partial taking." *Id.* at 385. Moreover,

> [t]he importance of allowing recovery for incidental losses has increased significantly since condemnation powers were initially exercised in this country. During the early use of such power, land was usually undeveloped and takings seldom created incidental losses. Thus the former interpretation of the "just compensation" provision of our constitution seldom resulted in the infliction of incidental losses. The rule allowing fair market value for only the

---

[12] Wisconsin is a "taking" only state. *See* Wis. Const. art. I, § 13 ("The property of no person shall be taken for public use without just compensation therefor."). The Wisconsin Legislature expanded this constitutional provision and enacted legislation wherein landowners may recover damages in a condemnation action. *See* Wis. Stat. Ann. § 32.19 (2018) ("The legislature declares that it is in the public interest that persons displaced by any public project be fairly compensated by payment for the property acquired and other losses hereinafter described and suffered as the result of programs designed for the benefit of the public as a whole[.]").

DOH attempts to distinguish *Luber* on the basis that Wisconsin has a specific statute that allows such damages. In its brief, however, DOH fails to cite West Virginia's statute that allows landowners to recover damages in a condemnation action. W.Va. Code § 54-2-9a. Furthermore, West Virginia is a "taking-damaging" state. W.Va. Const. art. III, § 9.

physical property actually taken created no great hardship. In modern society, however, condemnation proceedings are necessitated by numerous needs of society and are initiated by numerous authorized bodies. Due to the fact people are often congregated in given areas and that we have reached a state wherein *re*-development is necessary, commercial and industrial property is often taken in condemnation proceedings. When such property is taken, incidental damages are very apt to occur and in some cases exceed the fair market value of the actual physical property taken.

*Id*. at 384-85 (footnotes omitted).

In *Clay County Realty Co. v. City of Gladstone*, 254 S.W.3d 859 (Mo. 2008), the landowner had commercial property that was slated for redevelopment by the city's initiative. Almost two years after announcing the project, the city cancelled its agreement with the developer and sought to receive tax funding for the project. The city took no further action to acquire the property, and the landowner sued the city, in an inverse condemnation action,[13] alleging violation of the constitutional right to just compensation.[14] The landowner argued that the city delayed the redevelopment project and, as a consequence, retail tenants did not renew their leases, causing the property values to decline. The court held that actions short of actual acquisition or physical

---

[13] Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of his or her property without the benefit of condemnation proceedings. *West Virginia Lottery v. A-1 Amusement, Inc.*, 240 W. Va. 89, 807 S.E.2d 760 (2017).

[14] Missouri is a "taking-damaging" state. *See* Mo. Const. art. I, § 26 (providing "private property shall not be taken or damaged for public use without just compensation.").

invasion of the property may still constitute a taking or damaging under the constitution. The court also recognized that some delays relating to condemnation proceedings were natural and unavoidable. Thus, it limited and clarified its holding:

> [B]efore property owners have a viable cause of action for precondemnation damages, they must establish that there has been aggravated delay or untoward activity in instituting or continuing the condemnation proceedings at issue. Without this . . . showing of "aggravated delay or untoward activity," every condemnation case would give rise to a separate cause of action based on precondemnation activity, because the condemnation process involves governmental and judicial decisions that are endemic with delays.

*Id.* at 869.

In *State v. Barsy*, 941 P.2d 971 (Nev. 1997), *overruled on other grounds by GES*, *Inc. v. Corbitt*, 21 P.3d 11 (Nev. 2001), the Nevada Supreme Court addressed the issue presented here and held that pre-condemnation activities of the state entitled the landowner to damages in addition to those resulting from the taking of his property.[15] The court in *Barsy* was persuaded by a leading case on the rights of property owners who sustain damages as a result of pre-condemnation activities by the condemning authority, *Klopping v. City of Whittier,* 500 P.2d 1345 (Cal. 1972).[16] In *Buzz Stew, LLC v. City of*

---

[15] Nevada is a "taking" state. *See* Nev. Const. art. I, § 8 ("Private property shall not be taken for public use without just compensation[.]").

[16] In *Klopping*, the California Supreme Court held that the condemnee must be compensated for loss of rental income attributable to pre-condemnation publicity where a (continued . . .)

*North Las Vegas*, 181 P.3d 670 (Nev. 2008), the court expanded its ruling in *Barsy*: "to the extent that *Barsy* indicated that a taking must occur to recover damages related to a municipality's announcement of intent to condemn and its improper action with respect to that announcement, that requirement has been eliminated as to precondemnation damages." *Buzz Stew*, 181 P.3d at 674.

We therefore hold that a landowner may seek damages for condemnation blight as an element of just compensation in a condemnation proceeding. W.Va. Const. art. III, § 9; W.Va. Code § 54-2-9a (2016). Because some delays relating to public projects are natural and unavoidable, before a landowner may recover damages for condemnation blight, he or she must establish that there has been an unreasonable delay in instituting the condemnation proceeding following its official announcement. Mere planning of the public project is insufficient to trigger a claim for damages. Additionally, a landowner must prove his or her damages were caused by the condemning authority's actions or inactions.[17]

---

condemnor acts unreasonably "either by excessively delaying eminent domain action or by other oppressive conduct[.]" *Id.* at 1355.

[17] In *Clay County Realty*, the court held that "property owners can prevail against condemning authorities for claims relating to condemnation blight where they provide specific evidence demonstrating aggravated delay, bad faith, *or* untoward activity by the condemning authority." 254 S.W.3d at 869 (emphasis added). In this case, Respondents have not alleged DOH engaged in bad faith, so we need not decide whether landowners (continued . . .)

25

Having determined that the type of damages claimed here are recoverable in a condemnation proceeding, we turn to DOH's contention that Respondents' alleged damages were speculative. DOH asserts Mr. Pifer testified only to nonspecific discussions he had with potential renters during the alleged period of blight. DOH notes that Respondents fully operated their businesses and used all aspects of their property following the condemnation announcement. Respondents counter that the threat of condemnation brought to a halt any negotiations with larger gasoline distributors. Mr. Pifer testified that there were no offers of rent, or back and forth negotiations because the larger distributors told him: "When the road's done we want to talk to you. When the road's done we will be interested in leasing your facility." Also, Respondents' expert, Mr. Rice, gave his opinion as to damages caused by condemnation blight based on reasonable market rental values during the relevant timeframe.

This Court has made clear that because a jury's verdict below is entitled to considerable deference, an appellate court should decline to disturb a trial court's award of damages on appeal as long as that award is supported by some competent, credible evidence going to all essential elements of the award. *Kessel v. Leavitt*, 204 W. Va. 95, 188, 511 S.E.2d 720, 813 (1998).

---

may recover condemnation blight damages by simply showing bad faith irrespective of unreasonable delay.

26

After carefully examining the evidence and testimony of damages offered by Respondents, we believe that the jury's verdict is well within the evidence presented. Respondents offered proof which furnished "reasonable certainty of damages[.]" Syl. Pt. 4, *Bartlett*, 156 W. Va. at 432, 194 S.E.2d at 384. Accordingly, we decline to disturb the trial court's award of damages for condemnation blight.[18]

## C. Interest on Award

In its judgment order, the trial court computed 10% interest on each of the five separate awards for condemnation blight damages for years 2003 to 2007, *and* 10% interest from March 9, 2010, forward based on the total awarded for just compensation. DOH argues that this method of calculating interest is contrary to the clear direction of West Virginia Code § 54-2-14a, which provides that

> [w]hen, after payment into court as provided under the authority of this section, the amount allowed by the report of the condemnation commissioners, or the verdict of a jury, if there be one, exceeds the amount which has been paid into court, the excess amount, *together with interest thereon at ten percent from the date of the filing of the petition* to the date of payment of the excess amount into court, may, at any time within three months after the report or verdict of a jury, as the case may be, has been confirmed and ordered to be recorded, be paid into court by the applicant for the persons entitled thereto. In no other instance shall interest be allowed on payments made pursuant to the provisions of this section.

---

[18] Because of our resolution of this issue, we find no merit to DOH's argument that the trial court incorrectly instructed the jury on the law regarding condemnation blight.

(Emphasis added).

In response, Respondents maintain that when landowners suffer condemnation blight prior to the filing of the petition, they are entitled to damages for those years and prejudgment interest. Respondents argue that the condemnation statutes do not specifically exclude condemnation awards from the general rule that litigants are entitled to prejudgment interest. *See e.g.*, Syl. Pt. 1, *Kirk v. Pineville Mobile Homes, Inc.*, 172 W. Va. 693, 310 S.E.2d 210 (1983) ("The law allows the recovery of prejudgment interest in cases involving damages to real property where the damages are reasonably susceptible to calculation.").

DOH has the better of the arguments on this issue. This Court recently recognized that the statutes governing condemnation proceedings clearly provide that interest is to be paid on the award from the date of filing of the petition. *W.Va. Dep't of Trans. v. Veach*, 239 W. Va. 1, 15, 799 S.E.2d 78, 92 (2017). In addition, it is well-established that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

As this Court recognized in *State by State Road Commissioner v. Professional Realty Co.*, 144 W. Va. 652, 110 S.E.2d 616 (1959), a court's jurisdiction is statutory and limited in eminent domain proceedings.

> Courts in the exercise of jurisdiction in eminent domain proceedings must observe constitutional principles relating to separation of powers and functions among the three branches of government. . . . The jurisdiction of a court or tribunal in condemnation proceedings is altogether statutory and limited, and can be exercised only in the manner and to the extent provided by statute, in force at the time the proceedings are instituted; and generally the court may adjudicate only questions which fairly arise and are relevant to the right of eminent domain, as provided by the statute. The power of condemnation is legislative, not judicial, and exists in the courts only by express authorization, and only to such an extent as has been expressly vested in them.

*Id*. at 659, 110 S.E.2d at 621 (quotation marks and citations omitted).

We therefore find that the trial court erred when calculating interest on the $178,965 jury award. Petitioner previously deposited $3,550 with the trial court, leaving the amount of excess at $175,415. The trial court should have calculated interest on the excess amount at 10% from the date of the filing of the petition. W.Va. Code § 54-2-14a. Therefore, we reverse and remand on this issue.

## IV. CONCLUSION

The May 11, 2018, order of the Circuit Court of Wood County is affirmed, in part, and reversed, in part. We affirm its ruling on the jury's award of damages for

29

condemnation blight. We reverse and remand with directions for the trial court to calculate interest on the award in accordance with West Virginia Code § 54-2-14a.

Affirmed, in part, reversed,
in part, and remanded.
